CEDAR BAY CONSTRUCTION, INC., APPELLANT, *v.*
CITY OF FREMONT ET AL., APPELLEES.

[Cite as Cedar Bay Constr., Inc. *v.* Fremont (1990), 50 Ohio St. 3d 19.]

(No. 89-77—Submitted January 17, 1990—Decided March 21, 1990.)

*Marshall & Melhorn, Richard M. Kerger* and *Jennifer J. Dawson*, for appellant.

*Squire, Sanders & Dempsey* and *Thomas G. Hermann,* for appellee city of Fremont.

*Arter & Hadden* and *Michael W. Currie,* for appellee Mosser Construction, Inc.

HOLMES, J. The single issue presented in this case is whether the municipality abused its discretion by allowing clarifications and/or interpretations of a bid given by a bidding contractor after bids were opened, but before an award was made. For the reasons cited below, we hold the municipality did not abuse its discretion.

Under Ohio's competitive bidding statute municipalities are required to make a "* * * written contract with [the] lowest and best bidder after advertisement for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city." R.C. 735.05. The intent of competitive bidding, under either the state statutes or a municipal charter, is "* * * to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms." *Chillicothe Bd. of Edn.* v. *Sever-Williams Co.* (1970), 22 Ohio St. 2d 107, 115, 51 O.O. 2d 173, 178, 258 N.E. 2d 605, 610 (construing R.C. 3313.46 as relating to the competitive bidding requirement for school boards).

Generally, courts in this state should be reluctant to substitute their judgment for that of city officials in determining which party is the "lowest and best bidder." "The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action." *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 590, 50 O.O. 465, 469, 113 N.E. 2d 14, 19; *Bloch* v. *Glander* (1949), 151 Ohio St. 381, 39 O.O. 216, 86 N.E. 2d 318; *State, ex rel. Gerspacher,* v. *Coffinberry* (1952), 157 Ohio St. 32, 47 O.O. 31, 104 N.E. 2d 1; *Wheeling Steel Corp.* v. *Evatt* (1944), 143 Ohio St. 71, 28 O.O. 21, 54 N.E. 2d 132. In *Atschul* v. *Springfield* (1933), 48 Ohio App. 356, 1 O.O. 522, 193 N.E. 788, the court explained how the bidding process should be construed, by noting:

"* * * [W]hen the statute provides for the acceptance of the *lowest and best* bid the city is not limited to an acceptance of merely the lowest dollar bid.

"The statutes of this state as to most public work provided some years ago for the acceptance of only the lowest bid. That was subsequently amended so as to read 'lowest and best bid.' This amendment clearly indicates that the Legislature recognized that an element other than the mere low dollar bid often enters into the letting of a contract. Hence the amendment providing that the contract should be let to the lowest and best bidder followed.

"This amendment, therefore, places in the hands of city authorities the discretion of determining who under all the circumstances is the *lowest and best* bidder for the work in question.

"This discretion is not vested in the courts and the courts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them." (Emphasis *sic.*) *Id.* at 362, 1 O.O. at 525, 193 N.E.

at 790. See, also, *State, ex rel. Walton,* v. *Hermann* (1900), 63 Ohio St. 440, 59 N.E. 104, syllabus ("[a] statute which confers upon a board of public officers authority to make a contract 'with the lowest and best bidder,' confers upon the board a discretion with respect to the contract which can not be controlled by mandamus"); *State, ex rel. United Dist. Heating, Inc.,* v. *State Office Bldg. Comm.* (1931), 124 Ohio St. 413, 179 N.E. 138 (an administrative board arbitrarily exercised its discretion by refusing to accept a bid solely upon the ground that nonunion labor might be employed upon the project).

This court in *Dayton, ex rel. Scandrick,* v. *McGee* (1981), 67 Ohio St. 2d 356, 359, 21 O.O. 3d 225, 226, 423 N.E. 2d 1095, 1097, defined "abuse of discretion" as follows: " 'The meaning of the term "abuse of discretion" * * * connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude * * *.' *Steiner* v. *Custer* (1940), 137 Ohio St. 448, paragraph two of the syllabus; *Conner* v. *Conner* (1959), 170 Ohio St. 85; *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82; and *State* v. *Adams* (1980), 62 Ohio St. 2d 151. 'Arbitrary' means 'without adequate determining principle; * * * not governed by any fixed rules or standard.' Black's Law Dictionary (5 Ed.). 'Unreasonable'

means 'irrational.' *Id.*" See, also, *State, ex rel. Shafer,* v. *Ohio Turnpike Comm., supra,* at 591, 50 O.O. at 469-470, 113 N.E. 2d at 19-20. As an example of a municipality's abuse of discretion, this court found in *Dayton, ex rel. Scandrick,* v. *McGee, supra,* that the use of an unannounced residency criterion in determining which bid was the "lowest and best" constituted an abuse of discretion. See, also, *Pincelli* v. *Ohio Bridge Corp.* (1965), 5 Ohio St. 2d 41, 34 O.O. 2d 55, 213 N.E. 2d 356 (Athens County officials were enjoined from paying public funds for bridge work performed by a contractor, when the county failed to advertise for and take competitive bids).

In the case *sub judice* the bid specifications required that the submitted bids be based on equipment manufactured by certain named manufacturers. The facts indicate Mosser based its bid, in part, on less expensive equipment manufactured by Amwell Company, a substitute manufacturer not on the preapproved list of manufacturers.[3] The city scheduled a meeting with Mosser, prior to awarding the contract, in order to clarify Mosser's bid. At the meeting the city received assurances that Mosser would supply equipment that met the specifications.[4] After receiving the

---

[3] The bid was to have been based on either Eimco or Dorr Oliver companies supplying settling tank equipment, sludge thickener equipment, and apparently the sludge mixer, gravity thickener pump and telescoping valves.

[4] The city's safety service director, Rodney Lash, testified that:

"Q. What was the purpose for that meeting?

"A. To investigate Mosser's bid and to see what kind of equipment they were providing.

"Q. And at that meeting, sir, did not someone on behalf of Mosser tell you, the

City, that it could provide Eimco [approved manufacturer] if Amwell didn't meet the specifications?

"A. They said they would meet the specification at no increase in price.

"* * *

"Q. * * * Mr. Lash, you were satisfied that Amwell was a suitable substitute, is that right?

"A. I was satisfied that Mosser Construction guaranteed to the City that they would build the plant according to specifications of the consulting engineer, at no increase in price."

The Project Manager, Johnson, testified:

assurances, the city decided to award the contract to Mosser.

In the city's legal notice advertising for bids and in its bid instructions it expressly reserved the right to waive any irregularities or informalities in the bidding process.[5] Moreover, the city reserved in its contract documents the right to "* * * conduct such investigations as * * * [it] deem[ed] necessary to assist in the evaluation of any bid and to establish the responsibility, qualifications, and financial ability of the Bidders, proposed Subcontractors and other persons and organizations to do the work in accordance with the Contract Documents to Owner's [city's] satisfaction within the prescribed time." Further, the city provided in its bid instructions that "[i]f a Bidder fails to name a manufacturer for a particular item, then the manufacturer on which the Drawings and Specifications are based will be used in the Declaration; or/and if more than one manufacturer is listed without one being indicated as the basis of design, then the Owner [or Engineer] will select one of the named manufacturers."[6]

On the basis of the facts cited above the trial court found for the city

and Mosser, concluding that, "* * * there being no substitutions listed by Defendant Mosser, and Defendant Mosser having contracted to provide the standards, *Defendant City of Fremont did not base its award on substitutions.*"[7] (Emphasis added.) Similarly, we conclude that testimony and documentation support the trial court's finding that the contract at issue was not awarded based on substitutions. Also, the city did not abuse its discretion, afforded under R.C. 735.05, by holding a meeting in order to confirm that Mosser's proposal was to meet the contract requirements, especially since none of the terms of the bid was changed or modified. Therefore, we hold that the city properly awarded the Wastewater Treatment Plant Improvements Contract 5 to Mosser.

For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., SWEENEY and WRIGHT, JJ., concur.

DOUGLAS, H. BROWN and RESNICK, JJ., dissent.

---

"Q. Did Mosser speak at that meeting?

"A. Yes.

"Q. What do you recall Mosser saying?

"A. I recall him saying that they were prepared to give us the Eimco if the Amwell didn't satisfy the specifications, or something to that effect."

[5] In the city's legal notice advertising for bids it noted: "The Owner reserves the right to reject any and all bids, to waive any informalities or irregularities in the bids received, and to accept any bid which it deems most favorable."

Further, Section 11.1 of the bid instructions stated:

"The Owner reserves the right to reject any and all bids, to waive any and all infor-

malities, and to disregard all nonconforming responsive or conditional bids."

[6] See fn. 7, *infra.*

[7] The trial court further determined that "* * * Mosser placed the manufacturers under items 486, 520, 510, 250 and 200 on BD. 25 — Declaration of Manufacturers (Exhibit 2A) *at its peril,* Defendant City of Fremont having reserved to itself the absolute right to use the manufacturer on which the Drawings & Specifications are based, or one of them, at the Engineer's discretion."

The trial court's findings are supported by the language contained in Section 2.2 of the Instruction to Bidders which provides that "[t]he work shall be done in accordance with the plans and specifications prepared by the Consultants, Gills, Guard, and Johnson, Inc."