JOURNAL ENTRY AND OPINION
Defendant-appellant, the City of Cleveland, appeals the judgment of the Cuyahoga County Court of Common Pleas finding in favor of plaintiff-appellee, Spiniello Companies (Spiniello), on Spiniello's complaint for declaratory judgment and injunctive relief. For the reasons that follow, we reverse.
This case arises out of a proposed contract for the cleaning and cement mortar relining of approximately 8,800 linear feet of water trunk mains in the City of Cleveland. The City estimated the project would cost approximately $1.3 million.
On November 30, 1998, the City published an Invitation to Bid on the project, known as Project 98-T1. The Invitation to Bid was issued by the City pursuant to Emergency Ordinance No. 1880-98, which provided that the contract would be awarded to the lowest responsible bidder after competitive bidding * * *. Paragraph A-16 of the bid specifications provided that the City * * * reserve[d] the right to reject any or all bids * * *.
Paragraph C-16 of Part C of the Supplemental General Conditions of the bid required that a bidder submit a notarized statement of experience with its bid package if the bidder had not previously completed a similar project for the City. The experience requirement stated:
 If the Contractor has not previously completed a contract of a similar size and nature for the City of Cleveland, the Contractor shall be required to demonstrate to the satisfaction of the Director that he or she has the required experience by submitting proof of all of the following in a notarized statement. The notarized statement must be submitted with the bid package.
 1. That the Contractor and/or Subcontractor has at least three (3) years experience as a prime contractor in cleaning and cement lining water mains in North America.
 2. That the Contractor and/or Subcontractor currently has the required organization, capital and ability to complete this project.
 3. That the Contractor and/or Subcontractor has completed at least five thousand (5,000) feet of trunk main (24" and larger) cleaning and lining within the last three (3) years as a prime contractor or subcontractor.
Three vendors bid on the project. With its bid, Spiniello submitted lists of its key employees and their experience, projects currently under construction and equipment owned by the company. In addition, Spiniello submitted its financial statement.
On December 11, 1998, the City opened the bids. Spiniello submitted a bid for $1,288,153.90; Terrace Construction Company, Inc. (Terrace) submitted a bid for $1,487,134.00; and Utilicon Corporation submitted a bid for $1,554,770.80. The City had estimated the cost of Project 98-T1 at $1.3 million.
On December 16, 1998, Terrace filed a formal objection with the City to the bid submitted by Spiniello, complaining that Spiniello did not meet the three-year minimum experience requirement set forth in Paragraph C-16 of the bid because it had been incorporated less than six months prior to submitting its bid. Terrace noted that the City had previously utilized the experience clause to disqualify Terrace from cleaning and cement lining water main projects and stated that it would be discriminatory, improper and illegal for the City to now apply the experience clause in a manner which would allow Spiniello to be considered a qualified bidder when the same experience clause was utilized in the past to disqualify Terrace. Terrace requested that the City declare Spiniello's bid nonresponsive and award the contract to Terrace as the lowest responsible bidder.
On December 21, 1998, Utilicon similarly filed a formal notice of protest with the City, alleging that Spiniello did not meet the three-year experience requirement set forth in the bid because it had been incorporated on June 26, 1998. In its notice of protest, Utilicon also noted that, for that matter, we are not sure that Terrace meets the same experience requirements.
After an investigation, the City determined that Spiniello did not meet the three-year experience requirement set forth in the bid and, therefore, deemed its bid as nonresponsive. Accordingly, Michael Konicek, Director of the Department of Public Utilities, recommended that the City award the contract to Terrace as the lowest responsible bidder. On December 30, 1998, however, after Spiniello protested to the Board of Control, the City, through the Board of Control, voted to postpone an award of the contract to Terrace as the lowest responsible bidder and requested further information from Terrace and Spiniello regarding Spiniello's compliance with the experience requirement set forth in the bid.
In its response to the City's request for information, Spiniello asserted that it had emerged from a Chapter 11 bankruptcy earlier in 1998 and that in the bankruptcy process had changed its name from Spiniello Construction Company to Spiniello Companies. Spiniello asserted that although the management of the company had changed, the technical people who worked for it were nearly the same as those who had worked for Spiniello Construction and that it had retained approximately ninety-five percent of the employees of the prior company. Spiniello also noted that Spiniello Construction Company had performed satisfactorily for the City on various water main projects in the last twenty years and that the key personnel who would be working on Project 98-T1 for Spiniello were experienced because they had worked on past projects completed by Spiniello Construction Company for the City.
Spiniello explained that the United States Bankruptcy Court for the District of New Jersey had approved a settlement among the Chapter 11 estate of Spiniello Construction Company, its bonding company, Employers' Insurance of Wausau, and other parties. As set forth in the court order, the settlement included the transfer to Spiniello of the machinery, equipment, vehicles, inventory, supplies, material, and fixtures, * * * together with the debtor's trade name and all licenses, franchises, permits, qualifications and pre-qualifications, experience, variances, certificates and all other general intangibles and approvals issued by any governmental authority which relate to or are necessary to use in connection with the operation of the debtor's business. (Emphasis added.) Spiniello also asserted that it was financially solvent and had sufficient financing available for continuing operations, as demonstrated by its financial statement, which was enclosed with its response letter.
In its response to the City's request for more information, Terrace noted that in 1991, it had submitted the low bid on a project regarding cleaning and lining water mains for the City, but the City awarded the contract to another contractor after determining that Terrace did not meet the experience requirement included in the bid. Terrace noted that it had in its employ at that time employees who met the experience requirement, but in rejecting its bid as nonresponsive, the City determined that Terrace, as a corporation, needed to meet the experience requirement.
In addition, Terrace noted that the City's bid invitation defined the term Contractor as corporation, firm or individual, or any combination thereof, and its heir or his successors, personal representatives, executors, administrations and assigns, and any person, firm or corporation who or which shall at any time be substituted therefor under this contract * * *. Thus, Terrace noted, the City's definition of Contractor specifically excluded any reference to predecessor corporations.
Finally, Terrace argued that Spiniello did not meet the three-year experience requirement because it had never performed a cleaning and lining job for the City and because it was not incorporated until June 1998.
 On January 6, 1999, the City, through the Board of Control, voted to reject all of the bids and rebid the project. On January 21, 1999, the city readvertised the bid specifications for Project 98-T1. The only change the City made to the specifications was to Paragraph C-16, in which the City changed the word Contractor to Bidder.
On January 27, 1999, Spiniello filed a complaint for declaratory judgment and injunctive relief, seeking 1) a declaratory judgment that the City's experience requirement was illegal and invalid and the City unlawfully discriminated against Spiniello by rejecting its bid on the project; and 2) an injunction prohibiting the City from conducting a rebid of the project and ordering the City to award the contract for the project to Spiniello.
Spiniello also filed a motion for a temporary restraining order, which the trial court granted. Subsequently, the trial court granted Terrace's motion to intervene in the action.
On March 10, 1999, the trial court held a hearing regarding Spiniello's complaint for declaratory relief and permanent injunction. Gary Stivaly, president of Spiniello Companies, testified that Spiniello was formed in June 1998 to carry on the business of Spiniello Construction Company. Stivaly testified that Spiniello employs essentially the same work force as Spiniello Construction Company and took over the same offices previously maintained by Spiniello Construction Company. Two of the officers of Spiniello Companies were previously officers of Spiniello Construction Company. Nearly all of the field management of Spiniello Construction Company is still employed by Spiniello Companies, including a field superintendent, field supervisor and lining foreman who had worked on a cleaning lining project for the City in 1997 and who Spiniello intended to utilize on Project 98-T1.
Stivaly testified further that Spiniello is one of the largest cleaning and lining contractors in the United States, annually garnering nearly $45 million of work out of an estimated market of $115 million. Stivaly testified that in the seven months since its inception in June 1998, Spiniello had lined approximately 600,000 feet of pipe and completed twenty-one water main cleaning and lining projects worth $16 million that had been awarded to Spiniello Construction Company and assumed by Spiniello as part of the bankruptcy settlement.
Stivaly testified that, based upon the experience of Spiniello Construction Company, Spiniello had met the experience requirement of other governmental entities, including the District of Columbia, the City of Los Angeles and the State of Washington, and that no other public entity with an experience clause in its bid specifications had rejected Spiniello's bid as nonresponsive for lack of experience or qualification.
On cross-examination, Stivaly admitted that these governmental entities had used their discretion in determining whether Spiniello met their respective experience requirements. Stivaly also admitted that, although required by the bid specifications, Spiniello had not submitted any documents or a notarized statement with its bid package detailing how it met the City's experience requirement because we assumed that we would be accepted as experience[d] with Spiniello Construction.
Gerard Hegarty, general superintendent of construction for Spiniello Companies, testified that he worked for Spiniello Construction Company prior to its acquisition by Spiniello. According to Hegarty, nothing changed when he became an employee of Spiniello. He works out of the same office as before, supervises the same people and works on the same contracts. Hegarty testified that while he was employed by Spiniello Construction Company, he was the general superintendent on Project 96-T2 for the City of Cleveland, a water main cleaning and lining project that was almost identical to Project 98-T1. According to Hegarty, he intended to serve as general superintendent for Project 98-T1.
Alex Margevicius, assistant commissioner in charge of the engineering section of the Division of Water for the City, testified that he is responsible for the City's capital improvement program regarding water mains and was involved in the bidding process regarding the project at issue. According to Margevicius, the City has included an experience clause in its bid specifications since 1988, after an inexperienced contractor performed poorly on two water main cleaning and lining contracts awarded in 1986 and 1987. Margevicius testified that the City's experience requirement pertains to the experience of the contracting company, rather than the persons employed by the company, because it would be impossible for the City to fairly and equitably compare the experience of individual employees in a company.
On cross-examination, Margevicius testified that the City's experience requirement was designed to get experienced and qualified contractors to perform the work at the best price. Margevicius testified that the City rejected Spiniello's bid because Spiniello had not previously completed a similar project for the City and had not been in existence for three years.
Margevicius testified that he recommended that the contract be awarded to Terrace but the City decided to reject all bids and rebid the project because there was a difference of opinion by city employees regarding whether the City could get a better price than that bid by Terrace if the City rebid the project. Terrace's bid was nearly $200,000 higher than the City's estimate of $1.3 million for the project.
Margevicius admitted that although Terrace is now allowed to bid on and receive water main trunk lining and cleaning projects from the City, in the past, the City applied the experience clause against Terrace so as to exclude it from receiving an award of projects it had bid on. In addition, Margevicius testified that the City has never allowed a contractor to receive a contract based upon a claim that the contractor had purchased experience from another contractor.
Finally, Margevicius admitted that the City did not advise Spiniello that its bid on Project 98-T2, a companion water trunk main cleaning and lining project for which Spiniello also submitted a bid to the City, was nonresponsive because it did not meet the City's experience requirement, but testified that Spiniello's bid on Project 98-T2 was rejected by the City and the contract awarded to another contractor because Spiniello was not the lowest bidder on the project.
On April 6, 1999, the trial court issued an opinion and order finding that:
 Spiniello Companies is a successor-in-interest to Spiniello Construction Company and is entitled to utilize the experience and personnel of Spiniello Construction Company to satisfy the experience requirement of the City of Cleveland. Spiniello Companies, as a successor-in-interes t to Spiniello Construction Company, clearly met all experience requirements and qualifications for the City's cleaning and lining Project. The City's application of the three-year experience [requirement] as applied to Spiniello Companies is unreasonable, invalid, and places an undue restriction on competition. The City abused its discretion in rejecting the bid of Spiniello Companies, and later rejecting all bids.
The trial court ordered the City to award Project 98-T1 to Spiniello Companies and enjoined the City from rejecting Spiniello's bid and rebidding the project. In light of its judgment in favor of Spiniello, the trial court denied the claims of intervenor Terrace Construction Company as moot.
The City timely appealed, assigning two assignments of error for our review:
 I. THE TRIAL COURT ERRED IN ENJOINING THE CITY OF CLEVELAND FROM REJECTING ALL OF THE BIDS FOR THE PUBLIC IMPROVEMENT OF CLEANING AND CEMENT MORTAR LINING OF TRUNK MAINS AREA 98-T1.
 II. THE TRIAL COURT ERRED IN DETERMINING THAT THE APPLICATION OF THE CITY OF CLEVELAND'S EXPERIENCE CLAUSE TO SPINIELLO COMPANIES IS UNREASONABLE, INVALID AND PLACES AN UNDUE RESTRICTION ON COMPETITION.
In its first assignment of error, appellant contends that the trial court erred in enjoining the City from rejecting all of the bids for Project 98-T1 and rebidding the project. We agree.
The purpose of competitive bidding is to enable a public contracting authority to obtain the best work at the lowest possible price while guarding against favoritism and fraud. Cedar Bay Constr. Inc. v. Fremont (1990), 50 Ohio St.3d 19, 21.
The bidding requirements, whether they be statutory or part of the invitation itself, do not act to bind the soliciting agency to any one bidder, regardless of that bidder's compliance with the specifications. J.R. Mason, Inc. v. South Bloomfield (Apr. 4, 1995), Pickaway Cty. App. No. 94CA13, unreported. Rather, public authorities are vested with wide latitude in determining which bids meet the qualification of lowest responsible bidder. Cedar Bay Constr. Inc., supra; Kokosing Constr. Co. v. Dixon (Jan. 31, 1991), Montgomery App. No. CA-12168, unreported; Buckeye Safety Supply, Inc. v. Flaherty (Feb. 27, 1990), Franklin App. No. 89AP-857, unreported.
In such matters, municipal officials are presumed, in the absence of evidence to the contrary, [to have acted] within the limits of the jurisdiction conferred by law * * * and not to have acted illegally but regularly and in a lawful manner. Cedar Bay Constr. Inc., supra, citing State ex rel. Shafer v. Ohio Turnpike Comm. (1953), 159 Ohio St. 581.
This presumption favoring the regularity and lawfulness of administrative actions imposes on the party challenging such actions the burden to show that the municipal corporation abused its discretion. [C]ourts cannot interfere in the exercise of this discretion unless it clearly appears that the city authorities in whom such discretion has been vested are abusing the discretion so vested in them. Cedar Bay Constr. Inc., supra. The term abuse of discretion connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude. Dayton ex rel. Scandrick v. McGee (1981),67 Ohio St.2d 356, 359.
It is well-settled that, absent bad faith or fraudulent conduct, a public authority does not abuse its discretion in rejecting all bids on a proposed contract. Discretion is given a board of public service to reject any and all bids, and this discretion will not be interfered with by mandamus where such discretion has not been abused and no vested right of any bidder is involved. State ex rel. Cleveland Trinidad Paving Co. v. Bd. of Public Service of Columbus (1909), 81 Ohio St. 218, paragraph one of the syllabus.
In Cleveland Trinidad Paving Co., supra, the Board of Public Service of the City of Columbus, after soliciting and receiving competitive bids regarding street improvements, voted to award the contract to the plaintiff as the lowest and best bidder. Before giving the plaintiff any notice that its bid had been accepted, however, the Board voted to rescind the award to plaintiff and readvertise for bids. Plaintiff filed suit, seeking a writ of mandamus ordering the Board to award it the contract.
The Ohio Supreme Court held that the Board had not abused its discretion in rescinding its award of the contract to the plaintiff and in rebidding the project, however, because a public authority has the inherent right to reject any, or all, of the bids:
 [A] further view of the statute would seem to conclusively determine the rights of the parties. Running all through the legislation is a plainly implied if not expressed purpose to clothe the Board of Public Service with a wide discretion in dealing with the making of contracts for street improvements, the various precautionary provisions being intended to safeguard the public in its dealing with contractors. The Board may reject any and all bids. * * * True, the language is that the board shall make a written contract with the lowest and best bidder * * * but the board is to determine who of all the bidders is the lowest and best, and no limit is placed respecting the time when the determination shall be made, nor is there any requirement refusing to the board the power, usually accorded to all municipal bodies, to rescind their action in a proper case. Id. (Emphasis added).
Similarly, in Cleveland ex rel. Industrial Pollution Control Inc. v. Cleveland (Nov. 27, 1985), Cuyahoga App. Nos. 49446, 49495 and 49777, unreported, this court held that the trial court erred in finding that the Board of Control of the City of Cleveland had abused its discretion in rejecting all bids. In that case, the City solicited bids for several waste transfer and disposal contracts. Despite the fact that an analysis of the bids had not been completed, the Board voted to reject all thirteen bids on the ground that twelve of the thirteen bids did not contain a performance bond as required by the bid specifications.
The thirteenth bidder filed suit, seeking injunctive relief. The trial court issued an injunction prohibiting the City from taking any action in furtherance of its rejection of the bids, rebidding the contract or awarding the contract to any bidder other than the thirteenth bidder.
This court reversed on appeal. We stated:
 The Board clearly was authorized to reject the bids, and there is no evidence that the Board failed to exercise its judgment in good faith.
 Municipal authorities have the discretion to accept or reject bids, and the courts will not control this discretion by injunction as long as this discretion is honestly exercised.
 Id., citing Cincinnati v. Wegehoft (1928), 119 Ohio St. 136.
We noted that the evidence showed that the Director of Public Services had acted in good faith when he recommended that the Board reject all thirteen bids because twelve were defective. We noted further that both the Codified Ordinances of the City of Cleveland and the bid specifications expressly set forth the Board's right to reject all bids. Accordingly, because the thirteenth bidder failed to overcome the presumption of validity of the acts of public officials, and failed to demonstrate bad faith or abuse of discretion, we held that the Board acted within the scope of its authority in rejecting all bids and the trial court erred in substituting its judgment for that of the Board. Likewise, in this case, appellee failed to demonstrate either bad faith, fraudulent conduct or abuse of discretion.
It was apparent shortly after the bids were opened that all three bidders on the project disputed whether the other bidders met the experience requirement set forth in the bid specifications. Indeed, Terrace filed a formal notice of protest with the City regarding Spiniello's compliance with experience requirement; Utilicon filed a formal notice of protest with the City regarding both Spiniello's and Terrace's compliance with the experience requirement; and Spiniello protested to the Board of Control when it learned that its bid was being rejected as nonresponsive because it did not meet the three-year experience requirement set forth in the bid specifications. Thus, the City faced the possibility of a lawsuit, regardless of which company was awarded the bid.
In State ex rel. Polaroid Corp. v. Denihan (1986), 34 Ohio App.3d 204, a case similar to this one, the Department of Highway Safety rejected all bids for supplying film, cameras and supplies for the Department's drivers' license program. Polaroid, the apparent low bidder, was rejected because the sample of film it had provided with its bid did not meet the bid specifications; NBS Imaging Systems, Inc. (NBS), the other bidder, was rejected for lack of competitive pricing. Polaroid brought suit, seeking a writ of mandamus ordering the Department of Highway Safety to award it the contract and enjoining the Department from awarding the contract to anyone other than Polaroid.
The Tenth District Court of Appeals held that the Department had not abused its discretion in rejecting all bids. Noting that there was a possibility of a lawsuit from NBS if the Department awarded the contract to Polaroid and the possibility of a lawsuit from Polaroid if the Department awarded the contract to NBS, the Appeals Court held that the Department did not abuse its discretion in rejecting both bids.
Likewise, in this case, the City was put on notice shortly after the bids were opened that all three bidders disputed the other bidders' compliance with the experience requirement. In addition, Terrace's bid, the next lowest bid after Spiniello's, was nearly $200,000 more than the City had estimated for the cost of the project. Faced with the possibility of a lawsuit and a bid that was not price competitive, the City exercised its inherent authority to reject all of the bids and rebid the project. We finding nothing unreasonable, arbitrary or unconscionable about the City's decision.
Furthermore, the City acted within the scope of its express authority when it rejected all the bids. Section 185.12 of the Codified Ordinances of the City of Cleveland, which pertains to the rejection or acceptance of bids regarding construction and improvement contracts, provides:
 The City, through the Board of Control, shall reserve the right to reject any or all bids, and any part of any bid * * *. In awarding a contract, the City shall reserve the right to consider all elements entering into the question of determining the responsibility of the bidder. Any bid which is incomplete, conditional, obscure or which contains additions not called for or irregularities of any kind, may be cause for rejection of such bid.
The bid specifications for Project 98-T1, of which the bidders presumably were aware, reiterate the City's right to reject all bids. Paragraph A-16 of the specifications provides that the City * * * reserves the right to reject any or all bids * * *.
Appellee having failed to demonstrate bad faith or abuse of discretion, the trial court erred in substituting its judgment for that of the City. Appellant's first assignment of error is therefore sustained.
Because our disposition of appellant's first assignment of error renders the second assignment of error moot, we need not consider it. See App.R. 12(A)(1)(c). Although Spiniello may well be a successor corporation to Spiniello Construction Company, we need not decide that issue because the City properly exercised its inherent authority to reject all bids and rebid the project.
This cause is reversed for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellants recover from appellee their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ________________________________________ TIMOTHY E. McMONAGLE, PRESIDING JUDGE
JOHN T. PATTON, J., CONCURS; and MICHAEL J. CORRIGAN, J., DISSENTS WITH DISSENTING OPINION ATTACHED.