OPINION
{¶ 1} Appellants sought to enjoin appellees from installing a 200,000 gallons per day ("gpd") sewage treatment plant in Parkman Township, Geauga County. After a bench trial the common pleas court denied appellants' claims. We affirm the trial court's decision.
 {¶ 2} In 1997, the Geauga County Board of Commissioners created the Parkman Sewer Service Area ("PSSA"). The PSSA included the residential and commercial properties located at the intersection of State Routes 168, 528, and 88, and U.S. Route 422. The PSSA also included a substantial portion of the Parkman Industrial Park ("PIP").
 {¶ 3} The board of county commissioners determined the boundaries of the PSSA after consultation with the Parkman Township Board of Trustees. The PSSA was created in response to specific pollution concerns and was designed to remedy these pollution problems. The PSSA wastewater treatment plant would discharge into the Grand River. Ohio EPA approved discharge of 300,000 gpd into the river.
 {¶ 4} Simultaneously with appellees' work on the PSSA, appellants sought approval from the Ohio EPA to construct a wastewater treatment plant to service the present and future needs of the PIP. Ohio EPA advised appellants that they could build such a facility only with the approval of the board of commissioners.
 {¶ 5} Appellants purchased a wastewater treatment plant from the Richfield Coliseum. This plant had a capacity of 214,000 gpd and could be expanded to 300,000 gpd. Appellants negotiated with appellees to install the plant. Appellants proposed to install the plant at no cost to appellees and to allow residential and commercial properties in the PSSA to tie into the plant. In return, appellants wanted the board of commissioners to permit them to use a portion of the plant's capacity for properties in the PIP and other properties not included in the PSSA. The board of county commissioners eventually rejected this proposal and proceeded with plans to construct their own 80,000 gpd waste water treatment facility. This plan was later increased to 200,000 gpd capacity.
 {¶ 6} Appellants filed suit to enjoin the construction of the 80,000 gpd plant. When the board of commissioners increased the planned capacity to 200,000 gpd, appellants amended their complaint, seeking to enjoin the design and construction of this plant and any plant with a capacity of less than 300,000 gpd.[1] Appellants contended that appellees acted arbitrarily, unreasonably, and unconscionably in determining the required capacity of the plant.
 {¶ 7} The trial court found that appellants failed:
 {¶ 8} "to demonstrate that the act of the Board of County Commissioners in directing that plans be prepared for a 200,000 gpd waste water treatment plant is an abuse of discretion. [Appellants] have raised some sound arguments and valid concerns regarding how the boundaries of the Parkman Sewer Service Area were determined, but such boundaries are not the issue before this Court. The Board of County Commissioners has taken preliminary actions to provide relief to an area of Parkman Township in which there is existing water pollution. The evidence presented does not demonstrate that a 200,000 gpd waste water treatment plant would fail to provide that relief. Whether a 200,000 gpd waste water treatment plant is the best solution, the wisest choice, or adequately addresses future concerns and potential growth is not for this Court to decide in proceedings seeking injunctive relief."
 {¶ 9} The trial court also found that appellants failed to demonstrate by clear and convincing evidence that they would suffer irreparable harm if the court failed to enjoin appellees from proceeding with plans for the plant.
 {¶ 10} Appellants' sole assignment of error asserts that, "The trial court abused its discretion in failing to enjoin appellees from planning a 200,000 gpd waste water treatment facility for Parkman Township."
 {¶ 11} The decision to grant or deny injunctive relief is solely within the discretion of the trial court. Therefore, we review such a decision only to determine if the trial court abused that discretion.Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist. (1995),73 Ohio St.3d 590, at paragraph three of the syllabus. "Abuse of discretion' means "more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude." Cedar BayConst., Inc. v. City of Fremont (1990), 50 Ohio St.3d 19, 22.
 {¶ 12} Further, "in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner." (Internal quotations omitted). Id. at 21, quoting State, ex rel. Shafer v. Ohio Turnpike Comm. (1953),159 Ohio St. 581, 590. "Courts should take `particular caution * * * in granting injunctions, especially in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important works or control the action of another department of government.'" Danis Clarkco Landfill Co. supra, at 604. While the Supreme Court of Ohio has yet to provide standards for lower courts to consider when deciding these types of cases, we find that the record in the instant case demonstrates that the trial court properly exercised its discretion in denying appellants' claim for injunctive relief.
 {¶ 13} R.C. 6116.01 grants boards of county commissioners the authority to plan county sewer improvements. The issue in the instant case is whether the trial court abused its discretion when it determined that the board of commissioners had not abused it discretion in planning a 200,000 gpd wastewater treatment plant.
 {¶ 14} Appellants argue that the board of commissioners improperly considered the zoning goals of Parkman Township in determining the required capacity for the treatment facility and failed to properly consider the potential for growth in the area and the corresponding need for additional capacity.[2] We disagree.
 {¶ 15} The record shows that in determining the required capacity, the board of commissioners relied upon the Parkman Sewerage Preliminary Design Report. The Geauga County Department of Water Resources prepared this report in 1999. This report details the estimated existing and anticipated future design wastewater flows. According to this report, the PSSA had an estimated existing flow of 54,000 gpd based on USDA design criteria of 250 gpd per Effective Dwelling Unit ("EDU"). The report then shows a design flow of 86,400 gpd based on Ohio EPA rules, which require the use of 400 gpd per unit in determining required capacity. The report also projects figures for the year 2020; a 20 year design based on Northeast Ohio Areawide Coordinating Agency population growth data. The USDA estimated future flow (based on 250 gpd per EDU) is an additional 34,250 gpd. Again, using the Ohio EPA requirements of 400 gpd per unit, the design estimate for 2020 is 54,800 gpd. Thus, the total projected flow based on existing and future customers is 88,250 gpd under USDA guidelines and 141,200 gpd based on Ohio EPA guidelines. These estimates were subsequently revised to reflect a total anticipated flow of approximately 200,000 gpd by 2020. Appellees' expert, Dennis P. Meek testified that he estimated the potential future capacity needs of the plant at between 200,000 gpd and 214,000 gpd, with the former being the more likely number.
 {¶ 16} Appellants presented evidence that these figures grossly underestimated the potential future development of the area, particularly of PIP. One of appellant's experts, James E. Parks, testified that his conservative estimate of the design required for the plant was 485,000 gpd. Appellants' other expert, David P. Hart, testified that the development potential for the area could require a capacity of 500,000 to 600,000 gpd.
 {¶ 17} Appellant also argues that appellees failed to properly consider the likely future difficulty in expanding the capacity of the plant. Appellants presented evidence that EPA regulations would make it difficult to expand the plant's capacity. However, appellees presented evidence that the difficulty in future expansion of the plant's capacity to 300,000 gpd would be no different than if the board of commissioners were to build the plant with this capacity today.
 {¶ 18} Appellants also argue that the board of commissioners abused its discretion in failing to accept appellants' proposal to install the Richfield Coliseum plant at appellants' expense. While at first blush, this seems like a reasonable alternative; the evidence presented at trial reveals otherwise. Don Wilson, Geauga County's sanitary engineer inspected the plant. He testified that the plant was 25 years old and that there were concerns about the structural integrity of the plant. Wilson also felt that the plant should include a longer warranty of ten to fifteen years, while appellants offered only a one year warranty. There was also evidence from the Ohio EPA that this plant experienced ongoing operational problems and numerous permit violations while it was used at the Richfield Coliseum. Thus, there were legitimate reasons for the board of commissioners to decline to use the plant as proposed by appellants.
 {¶ 19} Appellants also argue that the trial court erred when it found that appellants failed to prove that they would suffer irreparable harm if the trial court failed to grant the requested injunctive relief. Given our disposition of appellants' other arguments, we need not address this issue.
 {¶ 20} The record in this case demonstrates that there was a legitimate difference of opinion as to what capacity was needed for the PSSA treatment plant. However, this difference of opinion does not demonstrate that appellees abused their discretion in choosing to go forward with plans for a 200,000 gpd treatment facility. As the trial court appropriately noted: "Whether a 200,000 gpd waste water treatment plant is the best solution, the wisest choice, or adequately addresses future concerns and potential growth is not for this Court to decide in proceedings seeking injunctive relief." The trial court properly exercised its discretion in denying appellants' claim for injunctive relief and appellants' assignment of error is without merit. Therefore, the judgment of the Geauga County Common Pleas Court is affirmed.
JUDITH A. CHRISTLEY, J., WILLIAM M. O'NEILL, J., concur.
[1] Appellees filed a counterclaim seeking declaratory judgment that they had the authority to construct, operate, and maintain the plant and that the proposed plant represented a reasonable exercise of their authority. Appellees also alleged that appellants were maintaining the action intentionally and maliciously. The trial court found in favor of appellants on the counterclaim. Appellees have not filed a cross-appeal of the trial court's decision on their counterclaim.
[2] Appellants also argue that appellees abused their discretion in designing the boundaries of the PSSA. The trial court found that this issue was not properly before the court, and thus, did not reach the merits of this issue. We agree. In their complaint and amended complaint, appellants sought only to preclude construction of a facility with what they deemed to be inadequate capacity. Appellants did not allege that the board of commissioners improperly determined the boundaries for the PSSA. Therefore, we need not address this issue.