OPINION
{¶ 1} The instant appeal was filed by appellants, Eye-Will Development, Inc., Newman Masonry, Inc., Edgewood Commons Corp., and The Home Builders Association of Greater Cleveland, from the October 6, 2005 judgment entry of the Lake County Court of Common Pleas, rendering judgment in favor of appellees, Lake County Board of Commissioners ("Board of Commissioners") and Albert J. Saari, P.E. ("Saari").[1]
 {¶ 2} On April 30, 2004, appellants filed a "Class Action Complaint For Money Damages, Declaratory Relief And Injunctive Relief" against appellees, alleging that appellees violated R.C. 6117.02 by disproportionately increasing the tap-in fee rate, instead of the general sewer rates chargeable to all customers.[2] Appellees filed a joint answer on May 24, 2004.
 {¶ 3} On September 17, 2004, appellants filed a motion for class certification pursuant to Civ.R. 23. Appellees filed a brief in opposition to appellants' motion for class certification on September 30, 2004. Following a hearing, the trial court granted appellants' motion on December 7, 2004.
 {¶ 4} In the late 1990's, Lake County undertook a project to improve, upgrade, and expand the Gary L. Kron Wastewater Treatment Facility ("GLK") at a cost of approximately $37,000,000. On February 22, 2001, the Board of Commissioners adopted a resolution effective April 2, 2001, to increase the tap-in fee from $1.125 per gallon to $5.705 per gallon. The tap-in fee is based on the calculation that each residential unit generates an average daily flow of 400 gallons of sewerage. The 400 gallon per day ("gpd") amount is considered to be one "Benefit Unit." Thus, each resident must pay a base tap-in fee of $2,282 ($5.705 x 400 gpd). The tap-in fee for non-residential users is at least the base tap-in fee and may be higher depending on the number of Benefit Units assigned. The Board of Commissioners had site specific documents that were prepared by their engineering consultants to assist them in their rate determination.
 {¶ 5} A bench trial commenced on May 20, 2005.
 {¶ 6} At the trial, appellants called appellee Saari as for cross-examination, who testified that beginning on April 2, 2001, $2,282 has been charged to customers for a single Benefit Unit. He stated that one Benefit Unit is assigned to a single family residence. The average gpd sewer flow for an average residential unit is 400. Saari indicated that the 400 gpd figure was used because that number was required by the Ohio EPA.
 {¶ 7} Next, appellants called Thomas E. Voldrich ("Voldrich"), Environmental Division Director with CT Consultants, who testified as for cross-examination also that he was involved as an engineer with the GLK. In a mid-1990's study, the gpd was 266. In planning plant expansion projects, he said that municipalities are generally required to follow the Ten States Standard, absent a variance. His mathematical configurations prepared with respect to the instant case established a gpd of 386. On re-direct examination, Voldrich stated that the 400 gpd figure is a recommended guideline by the Ohio EPA. He believed that is was reasonable to use the 400 gpd Ohio EPA standard. Voldrich indicated that none of his colleagues ever questioned the reasonableness of the 400 gpd Ohio EPA standard. In 1998, his mathematical configurations established a gpd of 468. Thus, he opined that a 400 figure was, and still is, very conservative and reasonable.
 {¶ 8} Karl Sieg ("Sieg"), a civil engineer licensed in the state of Pennsylvania, testified as an expert witness for appellants. He stated that tap-in fees should be calculated by multiplying the dollar rate by the gpd, based upon actual water consumption records if such data is available. Sieg opined that the actual gpd, after adjustments, should have been 254 rather than 400, based upon the information available. He indicated that the gpd would be significantly lower if appellees had followed the Ten State Standard method, instead of using the flat rate of 400 gpd as set forth by the Ohio EPA. According to Sieg, it is reasonable for tap-in fees to cover expansion costs but not operation and maintenance costs. He concluded that the tap-in fee was high and unreasonable. Sieg believed that every home builder is paying an extra $833 per Benefit Unit.
 {¶ 9} Dennis Meek ("Meek"), a civil engineer employed by Burgess 
Niple, an engineering firm involved in the planning and design of the GLK expansion, testified for appellees. According to Meek, most engineers in the state of Ohio use the Ohio EPA Green Book 400 gpd figure and the Ten States Standard guidelines. Meek opined that the 400 gpd figure was correct within reasonable engineering practice. His calculation of total demonstrated flow per connection was slightly higher than 400 gpd. He said that it is a usual and customary practice to use the 400 gpd figure in Ohio, and that Geauga County has also used that figure.
 {¶ 10} Pursuant to its October 6, 2005 judgment entry, the trial court found in favor of appellees, determining that the subject tap-in charges do not violate appellants' rights to reasonable tap-in charges under R.C. 6117.02. The trial court further concluded that based upon appellants' "failure to set forth any evidence at trial," the tap-in fees do not violate appellants' equal protection and due process rights under the Ohio Constitution. It is from that judgment that appellants filed a timely notice of appeal and make the following assignment of error:
 {¶ 11} "The [t]rial [c]ourt erred or abused its discretion in finding [appellees'] actions reasonable under R.C. * * * 6117.02."
 {¶ 12} In their sole assignment of error, appellants argue that the trial court erred when it found appellees' actions reasonable under R.C.6117.02. Appellants allege that it is unreasonable under R.C. 6117.02
for Lake County to use a sewer flow guideline to set and charge tap-in rates, where it has available actual flow figures. Also, appellants contend that it is unreasonable for Lake County to charge a tap-in rate of $2,282, based on an estimated consumption formula, where actual consumption figures for the effected area dictate a rate of only $1,449.
 {¶ 13} This court stated in Hofstetter v. Bd. of Commrs. of GeaugaCty., Ohio, 11th Dist. No. 2002-G-2423, 2003-Ohio-4598, at ¶ 11:
 {¶ 14} "[t]he decision to grant or deny injunctive relief is solely within the discretion of the trial court. Therefore, we review such a decision only to determine if the trial court abused that discretion.Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist. (1995),73 Ohio St.3d 590 * * *, at paragraph three of the syllabus. 'Abuse of discretion' means 'more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude.' Cedar BayConst., Inc. v. City of Fremont (1990), 50 Ohio St.3d 19, 22
* * *." (Parallel citations omitted.)
 {¶ 15} "* * * [I]n the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner." Cedar Bay, supra, at 21.
 {¶ 16} R.C. 6117.02 provides in part:
 {¶ 17} "(A) The board of county commissioners shall fix reasonable rates * * * for the use, or the availability for use, of the sanitary facilities of a sewer district * * *.
 {¶ 18} "(B) The board also shall establish reasonable charges to be collected for the privilege of connecting to the sanitary facilities of the district * * *."
 {¶ 19} Pursuant to R.C. 6117.02, "[g]overnmental authorities have broad discretion in establishing fees and rates and in maintaining financing schemes to support sewer systems. Such fees and rates must be reasonable with the methods and manner of financing such systems left largely with the authorities." Haymes v. Holzemer (1981),3 Ohio App.3d 377, paragraph two of the syllabus.
 {¶ 20} The Supreme Court of Ohio stated: "[i]n attempting to equalize the burden of the cost of constructing an adequate sewage system between present users and new users of the system, a municipality * * * may impose upon new users a tap-in or connection fee which bears a reasonable relationship to the entire cost of providing service to those new users." Amherst Builders Assn. v. Amherst (1980), 61 Ohio St.2d 345, syllabus.
 {¶ 21} In the case at bar, the record establishes that specific flow studies were conducted and flow figures were comparable to Ohio EPA sewer flow guidelines. Based on the testimony at the bench trial, in addition to the voluminous documentary evidence presented, we agree with the trial court that appellants failed to demonstrate that the tap-in fees were unreasonable. Appellants presented no evidence to support their claim that appellees were required to exclusively use actual water consumption data or the Ten States Standard to calculate the total tap-in fee. In fact, the design standard of 100 gallons per capita per day and the Ten States Standard are guidelines, not mandates, for designing wastewater treatment facilities for establishing tap-in rates in Ohio.
 {¶ 22} Although there was a difference of opinion as to the gpd amount between appellants and appellees, this difference does not demonstrate that appellees abused their discretion in choosing the 400 gpd amount as one Benefit Unit. See Hofstetter, supra, at ¶ 20. The trial court correctly determined that appellees did not abuse their discretion in passing the resolution. Under R.C. 6117.02, although appellees did not articulate specifics regarding actual data, it was reasonable for them to utilize Ohio EPA sewer flow guidelines to assist in establishing tap-in rates. The trial court properly exercised its discretion in rendering judgment in favor of appellees.
 {¶ 23} For the foregoing reasons, appellants' assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
[1] The Board of Commissioners is the governing body of Lake County, Ohio, and oversees the Lake County Department of Utilities and the Lake County Regional Water and Sewer District. Saari, Lake County Sanitary Engineer, charges and collects tap-in fees.
[2] Appellants asserted six counts in their complaint: count one, declaratory judgment; count two, unauthorized tap-in charges under R.C.6117.02; count three, violation of equal protection; count four, violation of due process; count five, injunctive relief; and count six, action for damages.