MECHANICAL CONTRACTORS ASSOCIATION OF CINCINNATI, INC. et al.

v.

UNIVERSITY OF CINCINNATI.

2002-Ohio-3506.]

Court of Claims of Ohio.

No. 98–07122.

Decided May 20, 2002.

Luther L. Liggett, Jr., and Aubrey L. Coleman, Jr., for plaintiffs.

Betty D. Montgomery, Attorney General, and William C. Becker, Assistant Attorney General, for defendant.

---

J. WARREN BETTIS, Judge.

{¶ 1}  On February 20, 2001, the Tenth District Court of Appeals reversed this court's May 22, 2000 judgment that had denied plaintiffs' claims for damages and attorney fees and remanded the case to this court for a determination of the nature and extent of plaintiffs' damages.  That court's opinion states:

{¶ 2}  "In denying all damages, the Court of Claims summarily held that '[b]ased upon the evidence presented, * * * plaintiffs are not entitled to any relief beyond' the injunctive relief granted.  The court cited, without discussion, two cases: *Hardrives Paving & Constr., Inc. v. City of Niles* (1994), 99 Ohio App.3d 243, 247 [650 N.E.2d 482]; and, an Eighth Appellate District case, *Cavanaugh Bldg. Corp. v. Bd. of Cuyahoga Cty. Commrs.* (Jan. 27, 2000), Cuyahoga App. No. 75607, 2000 WL 86554.

{¶ 3}  " 'In *Hardrives Paving & Constr.*, the Eleventh Appellate District held:

{¶ 4}  " ' 'Injunctive relief should not ordinarily be granted unless irreparable injury will result.  * * * Stated otherwise, "[a]n injunction is proper only where there is no adequate remedy at law.  *Fodor v. First Natl. Supermarkets* (1992), 63 Ohio St.3d 489, 491 [589 N.E.2d 17] * * *.  It would appear that if monetary damages for lost profits were an available remedy, damages would provide an adequate remedy at law and injunction would not be appropriate.  Thus, the fact that injunctive relief is available generally indicates that a monetary award is not available for lost profits.

{¶ 5}  " 'Furthermore, other policy considerations militate against allowing monetary damages.  The intent of competitive bidding is to protect both the public and the bidders themselves.  See *Cedar Bay Constr.* [*v. City of Fremont* (1990)], 50 Ohio St.3d [19] at 21 [552 N.E.2d 202] * * *.  Thus, if we were to allow appellant to receive monetary damages, only the bidders would be protected because the public would have to pay the contract price of the successful bidder plus the lost profits of an aggrieved bidder.  However, if injunction is the sole remedy, both the public and the bidders themselves are protected.'  Id. at 247–248 [650 N.E.2d 482].

{¶ 6}  "At first blush, the above rationale upon which monetary damages are denied is logical and pragmatic.  However, we are troubled by the reality that the limited relief granted results in a public entity's potential ability to violate laws intended to benefit the public without fear of any meaningful reprisal which might deter such violations in the future.  In addition, we are mindful of the fact that the plaintiffs who pursue such litigation and prevail in attaining a declaratory

judgment favorable to all taxpayers might have no recourse in recouping financial losses incurred in the process.

{¶ 7} "The minimal case law addressing this dilemma suggests that the remedies of injunction and declaratory judgment on the one hand, and money damages on the other, are necessarily mutually exclusive. Under the circumstances of this case, we cannot sustain the trial court's holding that, as a matter of law, these plaintiffs are entitled to no further relief than injunction.

{¶ 8} "This litigation has been ongoing for years. The plaintiffs have unceasingly attempted to compel the university to comply with the law and, based upon this record, have had good reason to anticipate that they might eventually, at the very least, recoup in the form of damages a portion of the extraordinary efforts and funds expended. Ultimately, if this court sustains the damages holding, these plaintiffs win only a very expensive, hollow victory in the form of a retrospective, virtually inconsequential wrist-slap to the university and a prospective cautionary declaration. The latter should certainly benefit the public; however, if plaintiffs are not granted more than a hollow victory, an understandable chilling effect would ensue upon future similarly situated would-be plaintiffs. * * *"

{¶ 9} Upon review of the case file, the opinion of the court of appeals, and the briefs submitted by the parties, this court makes the following determination.[1]

{¶ 10} Promissory estoppel is an equitable doctrine that is designed to prevent harm which results from reasonable and detrimental reliance upon improper representations. An essential element of an action predicated upon promissory estoppel is the detrimental reliance of the promisee upon false representations of the promisor. *Karnes v. Doctors Hosp.* (1990), 51 Ohio St.3d 139, 555 N.E.2d 280.

---

1. Some of the issues in this case were previously addressed. In *Tiemann v. Univ. of Cincinnati* (Oct. 16, 1997), Court of Claims No. 97–07781 (which will be referred to as *"Tiemann I"*), plaintiffs (many of whom are plaintiffs in the instant action) filed suit against defendant for preliminary and permanent injunction prior to having bid on the construction project. On October 16, 1997, this court permanently enjoined defendant from proceeding any further on the conference center project without complying with the public works and bidding laws; dismissed plaintiffs Village Building Services, Inc., the Charles Randolph Company, and the Cincinnati Chapter, National Electric Contractors Association, Inc. for failure to prosecute their claims; and denied plaintiffs' request for attorney fees. On November 6, 1997, the court of appeals granted defendant's motion to stay the trial court's October 16, 1997 judgment entry, which included a permanent injunction pending defendant's appeal of the case. On April 21, 1998, the court of appeals rendered an opinion wherein it affirmed in part and reversed in part the trial court's judgment and remanded the case to the Court of Claims for further proceedings in accordance with law consistent with said opinion. *Tiemann v. Univ. of Cincinnati* (1998), 127 Ohio App.3d 312, 712 N.E.2d 1258 (which will be referred to as *"Tiemann II"*). However, plaintiffs dismissed that action with prejudice on April 2, 1999. Plaintiffs filed the instant case on July 10, 1998.

{¶ 11}  Defendant argues that plaintiffs cannot recover damages on a theory of promissory estoppel because defendant did not represent in any of its bid documentation that it would comply with the public bidding requirements of R.C. Chapter 153.  However, that argument lacks merit.  Since defendant is a state university, it should have been complying with the provisions of R.C. Chapter 153 from the beginning of the construction project.  The court finds that it would be reasonable for a bidder on the project to have relied on the representation that defendant, a state university, would be bound by the public works regulations contained in R.C. Chapter 153.  Therefore, the court finds that if plaintiffs prove that they would have been awarded a subcontract if R.C. Chapter 153 had been followed, they may state a claim for damages under the equitable theory of promissory estoppel.  However, those damages must be limited to the cost of the bid preparations.  A plaintiff who would not have obtained a contract in the first instance has no legal entitlement to compensation because its bid estimates cannot be linked to the alleged mistake in the awarding of the contract to another bidder.  See *Midwest Serv. Mgt., Inc. v. Licking Valley Local Bd. of Edn.* (2001), 144 Ohio App.3d 443, 760 N.E.2d 837.  The court will analyze each party's claim individually, as follows:

### 1.  RPC Mechanical, Inc. ("RPC")

{¶ 12}  Majid Samarghandi, President of RPC, testified that RPC submitted a bid for the heating, ventilation and air conditioning ("HVAC") on February 19, 1998, and a bid for additional tenant improvements on March 13, 1998.  RPC was not awarded a contract for either bid.  RPC asserts a claim for lost profits in the amount of $580,000 and bid preparation costs in the amount of $32,310.  Defendant contends that even if bidding for the HVAC subcontract would have been performed pursuant to R.C. Chapter 153, RPC would not have been selected because it was not the lowest responsive and responsible bidder on that subcontract.  RPC's initial bid form was incomplete, containing only the base price of $3,081,000.  Upon determining that RPC and Peck, Hannaford & Briggs ("PHB") were the two most responsive and responsible bidders, defendant allowed both companies to file revised bids.  RPC's second, revised bid was submitted with the same base price;  however, upon examination, the correct bid amount appeared to be $3,457,500.  It was ultimately determined that the true price of RPC's second bid was $3,728,500.  The successful revised bid submitted by PHB was $3,501,126.  The court concludes that RPC has not proven, by a preponderance of the evidence, that it was the lowest responsive and responsible bidder for the HVAC contract.  Therefore, RPC is not entitled to any monetary damages.

### 2. Fred A. Nemann Co. ("Nemann")

■ {¶ 13} Fred Nemann, President, testified that on July 7, 1997, his company submitted a bid for plumbing and other site work for $965,000. Subsequently, a deduction of $87,000 was made, lowering the bid to $878,000. He estimated a profit of ten percent ($87,800) and stated that the cost to prepare the bid was $5,000, at the rate of $1,000 per day. He submitted the bid to Carlisle Construction Company ("Carlisle") because the two companies bid the project together. Carlisle submitted the bid to defendant. Nemann was not awarded a contract. Nemann asserts a claim for lost profit in the amount of $87,800 and for the bid preparation cost of $5,000.

{¶ 14} Defendant contends that Nemann did not bid on any of the subcontracts that were bid by the general contractor because Nemann submitted its bid to Carlisle, whose bid on the site excavation subcontract was unsuccessful. Therefore, if Nemann has a claim it is against Carlisle. The court finds that plaintiffs have not proven that Carlisle was the lowest responsible and responsive bidder for the plumbing contract if R.C. Chapter 153 would have been followed. Therefore, Nemann has failed to prove its claim for damages.

### 3. The Geiler Company, Inc. ("Geiler")

■ {¶ 15} Geiler is not a named plaintiff but is a member of two of the trade associations that are plaintiffs: Greater Cincinnati Plumbing Contractors Association, Inc., and Mechanical Contractors Association of Cincinnati, Inc. President Reid Geiler testified that he understood that Walsh Construction ("Walsh") served as the construction manager on the project and that he initially contacted Walsh representatives to express interest about the project. Walsh then requested that Geiler, prior to any bidding, review the specifications for the HVAC and plumbing of the conference center, and prepare both a list of questions regarding the completeness of the specifications and a budget for the drawings that Walsh gave Geiler. Geiler stated that this work cost his company $13,590. Geiler also stated that his company laid out a route for the piping for the temporary steam-heat tap-in based upon visiting the site and by studying the drawings. Geiler submitted a proposal for the temporary steam heat in the amount of $33,500, including a profit of $3,785. Geiler was not awarded the steam heat job and did not subsequently bid on the plumbing contract. Geiler contends that the companies that were chosen to perform the steam-heat job (PHB and Stark Plumbing) were actually given Geiler's proposal and drawings to work with. Geiler seeks lost profit in the amount of $3,785 for the bid on the temporary steam-heat tap-in, lost opportunity to bid on other projects in the amount of $17,000, cost of drawings and budgets submitted to Walsh in the

amount of $13,590, and costs to prepare the steam-heat proposal in the amount of $2,700.

{¶ 16}   Defendant contends that Geiler should be dismissed as a party because it did not bid on any contract and is not a party plaintiff.   Defendant further contends that Geiler performed voluntary services with an alleged value of $13,590 before the bidding began.   Defendant contends that if Geiler has any claim at all, it would be against the general contractor, Walsh Construction.   The court finds defendant's argument to be persuasive.   Geiler has failed to prove its claim for damages by a preponderance of the evidence.

### 4.   Village Building Services, Inc. ("VBS")

{¶ 17}   President Oscar Willingham testified that his company was a certified "Minority Business Enterprise" ("MBE") and that MBE was the only minority contractor to submit a bid for plumbing.   Accordingly, as the only minority contractor, VBS claims that it should have received an award regardless of bid price, under Ohio construction contract set-aside statutes.   Willingham testified that his company submitted an initial bid for the plumbing work dated February 6, 1998.   At Walsh's request, VBS later revised its bid (dated February 19, 1998), to $1,720,583, with a ten percent profit markup of $172,058.   VBS was not awarded a contract.   Willingham testified that the cost of preparing the bid was $17,040 and that VBS lost a minimum of $30,000 in opportunity costs on another project as a result of bidding on the plumbing package.

{¶ 18}   Defendant asserts that VBS's claim is barred by res judicata and collateral estoppel because VBS was dismissed as a party in *Tiemann I*. However, the court rejects that argument because *Tiemann I and II*, dealt with a distinguishable set of facts: VBS did not bid on a contract in *Tiemann I and II* but it did bid on the plumbing subcontract in this case.   Defendant also asserts that both the initial and revised bids submitted by VBS for the plumbing subcontract were higher than those of two competing bidders, Teepee's River City and the Nelson Stark Company, and, therefore, VBS would not have been the lowest responsive and responsible bidder pursuant to R.C. Chapter 153.

{¶ 19}   Defendant further contends that VBS lacks standing because its claim is based upon an unconstitutional statute.   The MBE statute was declared unconstitutional in *Associated Gen. Contrs. of Ohio, Inc. v. Drabik* (C.A.6, 2000), 214 F.3d 730, certiorari denied sub nom. *Johnson v. Associated Gen. Contrs. of Ohio, Inc.* (2001), 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963. " 'An unconstitutional act is not a law;  it confers no rights;  it imposes no duties;  it affords no protection;  it creates no office;  it is, in legal contemplation, as inoperative as though it had never been passed.' " *Middletown v. Ferguson* (1986), 25 Ohio St.3d 71, 80, 25 OBR 125, 495 N.E.2d 380, quoting *Norton v.*

*Shelby Cty.* (1886), 118 U.S. 425, 442, 6 S.Ct. 1121, 30 L.Ed. 178. Since VBS had no protected right under the invalidated minority business enterprise statute, a failure to follow the statute cannot have caused it legal injury. Therefore, VBS's claim for damages is denied.

### 5. The Fred B. DeBra Company ("DeBra")

{¶ 20} President Fred B. DeBra testified that his company submitted a bid for the HVAC package on February 17, 1998, in the amount of $3,415,000, with profit calculated at $218,700 and the cost of preparing the bid estimated at $12,400. Although DeBra's initial bid was lower than the revised bid submitted by PHB, DeBra was not awarded the contract. PHB was awarded the contract at the price of $3,501,126.

{¶ 21} Defendant contends that DeBra's bid was nonresponsive and that the alleged damages are unsupported by the evidence. The court finds that although DeBra's initial bid was lower than the contract that was ultimately awarded, both RPC and PHB submitted initial bids ($3,081,000 and $3,350,000, respectively) that were lower than DeBra's initial bid of $3,415,000. Upon review of DeBra's bid documentation, the court finds that its bid was not "responsive" insofar as that term is used in R.C. 9.312 and R.C. Chapter 153. Therefore, the court finds that DeBra has not proven by a preponderance of the evidence that it was the lowest responsive and responsible bidder pursuant to R.C. Chapter 153 and is not entitled to damages.

### 6. ESI, Inc.

{¶ 22} ESI is not a named plaintiff but is a member of the trade association, Cincinnati Chapter, National Electrical Contractors Association, Inc. President Ray Harrison testified that on March 23, 1998, ESI submitted a bid for the electrical package in the amount of $3,845,500, including profit of $187,113 and the cost of bid preparation at $23,078. ESI was not awarded a contract.

{¶ 23} Defendant contends that ESI has no standing because the trade association has none. Assuming that ESI has standing, defendant contends that ESI's bid was both untimely and higher than any other bid on the electrical subcontract. ESI's bid was not timely submitted due to the unexpected illness of its chief estimator; however, it is documented that ESI requested and was granted an extension to submit its bid. When ESI submitted its bid, it was the highest of the three bids submitted. Based upon the fact that ESI's bid was not the lowest, ESI has not proven by a preponderance of the evidence that it was the lowest responsive and responsible bidder pursuant to R.C. Chapter 153.

{¶ 24} Plaintiffs also assert a claim for attorney fees on the basis of being "private attorneys general" and on the basis of having obtained a declaratory judgment. However, those claims lack merit. In *Tiemann I,* plaintiffs' request for attorney fees was denied. The granting of attorney fees under R.C. 2721.09 is discretionary. Moreover, the court finds that R.C. 2721.16 (captioned: "Award of attorney's fees") applies to this case. See *State ex rel. Beacon Journal Publishing Co. v. Ohio Dept. of Health* (1990), 51 Ohio St.3d 1, 553 N.E.2d 1345. Therefore, plaintiffs have failed to prove their claim for attorney fees.

{¶ 25} In the final analysis, none of the plaintiffs has proven by a preponderance of the evidence that it is entitled to any monetary damages.

Judgment accordingly.

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.