OPINION
{¶ 1} Plaintiffs-appellants, Ohio Association of Public School Employees-AFSCME, Local 4, AFL-CIO ("OAPSE"), and 35 individuals (collectively "appellants"), appeal from a judgment of the Franklin County Court of Common Pleas dismissing their claims against defendants-appellees School Employees Retirement System ("SERS"), its individual board members and its executive director (collectively "appellees") pursuant to appellees' Civ.R. 12(B)(6) motion to dismiss. For the following reasons, we affirm in part and reverse in part that judgment.
 {¶ 2} OAPSE is an employee organization that has among its purposes the representation of active non-teaching school employees.
 {¶ 3} Appellants Joann Johntony, Linda Mobley, Sandra Wheeler, Mary Ann Howell, Betty Simmons-Talley, Mary DeVine, Rosella Tope, David Hamilton, William Higgins, Mary Beth Thompson, William Hurlow, Sylvia Holmes, Vicky Laub, Christine Holland, Deborah Weihrauch, Debra Basham, Hoberta Roach, Barbara Ward, Geneva Bates, Mary Blevins, Pam Dolence, and Norma Scholsser ("employee-appellants") are public school employees and are active employee members of SERS. As such, they have an amount equal to ten percent of their income deducted from their gross salaries for each payroll period as a contribution towards the cost of retirement benefits, not including health care insurance.
 {¶ 4} Appellants Grace M. Nagel, Julia K. Martin, Bonnie B. Clark, Betty H. Harris, Sally Steagall, Dorothy C. Fannin, Anna M. Stegman, Catherine M. Clouse, Bernice L. Close, and Lee H. Martin ("retiree-appellants") are retired school employees, retirants of SERS, who are currently receiving retirement allowances and health care coverage from SERS.
 {¶ 5} Appellee SERS is a public entity authorized to operate and maintain the retirement system on behalf of all non-certified/non-licensed public school employees in Ohio in accordance with Chapter 3309 of the Ohio Revised Code.
 {¶ 6} With few exceptions, non-certified/non-licensed public school employees are required by law to contribute to SERS — currently at the rate of ten percent of their gross earnings. Employee contributions are forwarded to SERS and applied to the employees' savings fund. Employers are also required to make contributions to SERS — currently at the rate of 14 percent of the employees' gross earnings, plus any additional contributions required under R.C. 3309.491 (the employers' surcharge). Employer contributions are forwarded to SERS and applied to the employers' trust fund.
 {¶ 7} The general administration and management of SERS is vested in the SERS board, which is composed of appellees auditor of state, attorney general, four SERS employee members (Jeannie Knox, Barbara Overholser, Barbara Miller, and Darlene Mulholland), and one retiree (Orris Fields) who is a recipient of SERS service or disability retirement benefits. The SERS board is a fiduciary of the funds created by R.C. 3309.60, including the employees' savings fund and the employers' trust fund.
 {¶ 8} Appellee Thomas Anderson is the executive director of SERS. He is employed pursuant to R.C. 3309.11 and is authorized, among other things, to act for the SERS board in accordance with the board's policies.
 {¶ 9} Retirees and disability benefit recipients of SERS are persons who have either met the age and eligibility requirements for service retirement, or became eligible to receive a disability retirement. Retirees and disability benefit recipients paid SERS contributions during the period of their employment in an amount up to ten percent of their earnings, depending on the law applicable at the time they were employed. When an SERS member dies before retirement, qualified beneficiaries of the member may become eligible for monthly survivor benefits from SERS, including health care coverage.
 {¶ 10} For many years, SERS has provided a health care plan for retirees in addition to paying pensions, disability benefits and survivor benefits.[1] Prior to 1989, all SERS members who retired from covered employment and qualified for SERS pension benefits also received free health care coverage from SERS, in addition to their pension. After 1989, retirees with at least 25 years of service credit with SERS, regardless of their age upon retirement, received free health care coverage. Retirees with less than 25 years of service credit were eligible for health care coverage from SERS in addition to their pension, but, they were required to pay between 5 percent and 75 percent of the monthly premiums. The percentage they were required to pay depended upon their years of service credit.
 {¶ 11} On July 16, 2003, SERS approved a number of changes to the costs and scope of the health care plan it would provide to its members. These changes were to take effect on January 1, 2004. The changes included the requirement that all SERS retirees pay at least 15 percent of the premium cost for health care coverage. This minimum premium requirement applied to all currently retired and disabled SERS benefit recipients, regardless of the date on which the SERS member retired or became disabled and regardless of whether they presently pay any portion of the premium for their health care coverage.
 {¶ 12} In addition, SERS changed the benefits provided under its health care plan and it increased co-pay amounts and out-of-pocket maximum requirements. These changes, coupled with the increased premium contributions, shifted a greater percentage of the health insurance costs to retiree and disability recipients. SERS undertook these changes to protect and preserve its health care fund in the face of rising health care costs and lower investment returns.
 {¶ 13} In response to the changes SERS made to its health care plan, appellants filed suit against appellees seeking declaratory, injunctive, and other legal and equitable relief. The complaint set forth six separate claims for relief: (1) declaratory judgment; (2) breach of contract/specific performance; (3) promissory estoppel; (4) unconstitutional taking; (5) breach of fiduciary duty; and (6) injunctive relief.
 {¶ 14} Subsequently, appellants filed a motion and application for preliminary injunction and request for an evidentiary hearing. On that same day, appellees filed a motion to dismiss appellants' complaint. The trial court referred both motions to a magistrate pursuant to Civ.R. 52 and Loc.R. 99.02. The magistrate elected to address appellees' motion to dismiss first.
 {¶ 15} On December 4, 2003, the magistrate issued a decision recommending that the trial court deny appellees' motion to dismiss except for: (1) any claim premised on the breach of a non-vested contractual right to specific health care coverage and; (2) any breach of fiduciary duty claim premised upon SERS's alleged wasting of SERS funds in constructing its new office building and in paying unreasonable and excessive salaries to SERS employees.
 {¶ 16} Appellees timely filed objections to the magistrate's decision with the trial court. Appellants also filed objections to that portion of the magistrate's decision that recommended dismissal of appellants' breach of fiduciary duty claims.
 {¶ 17} In the meantime, the magistrate conducted an evidentiary hearing pursuant to appellants' motion for preliminary injunction. On December 31, 2003, the magistrate issued a decision granting appellants' motion for preliminary injunction. Thereafter, appellants filed a motion, pursuant to Civ.R. 53(E), seeking an order from the trial court granting a preliminary injunction consistent with the magistrate's decision. That motion was granted on January 2, 2004, and was effective for a period of ten days.
 {¶ 18} On January 12, 2004, the trial court issued an interim decision in which it rejected the magistrate's December 4, 2003 decision in its entirety and vacated its January 2, 2004 interim order granting the preliminary injunction. The trial court also granted appellees' Civ.R. 12(B)(6) motion to dismiss, stating that an opinion would follow.
 {¶ 19} On January 23, 2004, the trial court issued its decision sustaining appellees' objections to the magistrate's decision and dismissing appellants' complaint in its entirety for failure to state a claim. The trial court determined that: (1) health care coverage is a benefit under Chapter 3309 and the rules promulgated thereunder; (2) "access" to group health care coverage vests; (3) such vesting does not lock in costs or levels of coverage for SERS retirees or members; and (4) SERS has the authority to change costs and levels of health care coverage. Although the trial court did not specifically address each cause of action alleged in appellants' complaint, the trial court resolved all claims in favor of appellees as a matter of law and, therefore, dismissed the complaint.
 {¶ 20} Appellants appeal, assigning the following errors:
[1.] The Court of Common Pleas erred in rejecting the Magistrate's Decision and in granting SERS' motion to dismiss the Complaint pursuant to Civ. R. 12(B)(6).
[2.] The Court of Common Pleas erred in finding that, as a matter of law, premium costs and levels of coverage for health care benefits provided to SERS retirees do not vest, but rather may be changed by the SERS Board.
[3.] The Court of Common Pleas erred as a matter of law in dismissing the entirety of the Complaint without ruling upon each separately pleaded claim thereof.
[4.] The Court of Common Pleas erred, as a matter of law and contrary to Civ.R. 53(E)(4)(b), in dismissing the entirety of the Complaint without ruling upon each objection raised by the parties to the Magistrate's Decision of December 4, 2003.
 {¶ 21} Appellees also filed a cross-appeal assigning the following assignment of error:
To the extent that the trial court determined that SERS must provide access to a group health care plan and that such access to group health care coverage vests upon its granting, the trial court erred.
 {¶ 22} For ease of analysis, we will address appellants' assignments of error out of order. Appellants contend in their second assignment of error that the trial court erred in finding as a matter of law that premium costs and levels of health care coverage provided to SERS retirees at the time of their retirement do not vest under R.C. 3309.661 and, therefore, may be changed. This assignment of error is closely related to appellees' cross-appeal, in which appellees allege that the trial court erred in finding that "access" to health care coverage (as distinguished from premium costs and levels of coverage) vests once coverage is provided. Therefore, we will address appellants' second assignment of error and appellees' cross-appeal together. Our review of issues of law is de novo. Cleveland Elec.Illuminating Co. v. Pub. Util. Comm. (1996), 76 Ohio St.3d 521,523.
 {¶ 23} The state retirement systems, including SERS, are creatures of statute and can only act in strict accordance with their enabling schemes. State ex rel. Horvath v. State TeachersRetirement Bd. (1998), 83 Ohio St.3d 67, 74. Therefore, we must look to the statutes governing SERS to determine whether a health care plan provided to SERS retirees is subject to vesting.
 {¶ 24} R.C. 3309.661 defines what SERS benefits vest. R.C.3309.661 provides:
The granting of a retirement allowance, annuity, pension, or other benefit to any person pursuant to action of the school employees retirement board vests a right in such person, so long as he remains the recipient of any of the funds established by section 3309.60 of the Revised Code, to receive such retirement allowance, annuity, pension, or benefit. Such right shall also be vested with equal effect in the recipient of a grant heretofore made from any of the funds named in section 3309.60 of the Revised Code.
 {¶ 25} In ascertaining the meaning of R.C. 3309.661, our primary concern is the legislative intent in enacting the statute. State ex rel. Auglaize Mercer Community Action Comm.,Inc. v. Ohio Civ. Rights Comm. (1995), 73 Ohio St.3d 723, 726. To determine the legislative intent, we look to the language of the statute itself. Columbus City School Dist. Bd. of Edn. v.Wilkins, 101 Ohio St.3d 112, 2004-Ohio-296, at ¶ 26. If a review of the statute conveys a meaning that is clear, unequivocal, and definite, the statute must be applied as written and the court need look no further. Wilkins, supra; Golden Christian Academyv. Zelman (2001), 144 Ohio App.3d 513, 520. "[C]ourts do not have the authority to ignore the plain language of a statute under the guise of statutory interpretation or liberal or narrow construction." State ex rel. Massie v. Gahanna-Jefferson Pub.Schools Bd. of Edn. (1996), 76 Ohio St.3d 584, 588. Rather, we must give effect to the words used in the statute and not delete words that are used or insert words that are not used. Campbellv. Burton (2001), 92 Ohio St.3d 336, 341. The literal language of a statute must be enforced whenever possible. Cablevision ofthe Midwest, Inc. v. Gross (1994), 70 Ohio St.3d 541, 544.
 {¶ 26} The first question we must address is whether payments for health care coverage are "benefits" as contemplated in R.C.3309.661. The term "benefit" is specifically defined in R.C.3309.01(O)(1):
"Benefit" means a payment, other than a retirement allowance or the annuity paid under section 3309.341 [3309.34.1] of the Revised Code, payable from the accumulated contributions of the member or the employer, or both, under this chapter and includes a disability allowance or disability benefit.
Thus, only a "payment" can qualify as a benefit under this definition. Except for a retirement allowance or annuity paid under R.C. 3309.341, the source of the funds determines whether a particular payment is a benefit. If the payment is from the accumulated contributions of the member or the employer, or both, the payment is a benefit.
 {¶ 27} Here, the source of the funds for SERS payments for health care coverage is reflected in R.C. 3309.69(B), which grants SERS the discretionary authority to provide health care coverage. R.C. 3309.69(B) states in relevant part:
The school employees retirement board may enter into an agreement with insurance companies, health insuring corporations, or government agencies authorized to do business in the state for issuance of a policy or contract of health, medical, hospital, or surgical benefits, or any combination thereof, for those individuals receiving service retirement or a disability or survivor benefit subscribing to the plan and their eligible dependents.
* * *
The board may contract for coverage on the basis of part or all of the cost of the coverage to be paid from appropriate funds of the school employees retirement system. The cost paid from thefunds of the system shall be included in the employer'scontribution rate provided by sections 3309.49 and 3309.491
[3309.49.1] of the Revised Code. The board shall not pay or reimburse the cost for health care under this section or section3309.375 [3309.37.5] of the Revised Code for any ineligible individual.
(Emphasis added.)
 {¶ 28} In turn, R.C. 3309.60(B) creates the "employers' trust fund," in which school employers' contributions are held in trust for the payment of all pensions "or other benefits provided by this chapter." Each year, SERS must determine the minimum annual compensation amount for each member that will be needed to fund the cost of providing future health care benefits. R.C.3309.491(A). SERS then determines each employer's minimum compensation contribution and applies those employer payments to the employers' trust fund for the purpose of funding future health care benefits. R.C. 3309.491(C).
 {¶ 29} Accordingly, because the employers' accumulated contributions fund the payments for the health care plan, we conclude that these payments are "benefits" for purposes of R.C.3309.661.[2]
 {¶ 30} Next, we must determine whether these benefits vest. R.C. 3309.661 expressly provides that "[t]he granting of a retirement allowance, annuity, pension, or other benefit to anyperson pursuant to action of the [SERS board] vests a right in such person, * * * to receive such retirement allowance, annuity, pension, or benefit." (Emphasis added.) We find that this language is clear, unequivocal and definite. Because the word "benefit" is defined in R.C. 3309.01(O)(1) as a "payment" (from a particular funding source), vesting occurs only if the payment is granted to a SERS retiree or beneficiary. Here, SERS does not grant payments for health care coverage to SERS retirees or beneficiaries. Rather, SERS makes payments to an insurance company which, in turn, provides health care coverage for the benefit of SERS retirees or beneficiaries. Therefore, although payments for health care coverage are benefits, they are benefits that do not vest under R.C. 3309.661.
 {¶ 31} Appellants argue that the definition of a benefit does not require that payment be to a retiree. We agree. However, simply because payments for health care coverage are benefits does not mean they are vested benefits. Appellants also emphasize the well-settled principle that retirement statutes "must be liberally construed in favor of the public employees and their dependents who the statutes were designed to protect." State exrel. Mallory v. Pub. Emp. Retirement Bd. (1998),82 Ohio St.3d 235, 240. However, there is no need to liberally construe or interpret a statute when its meaning is clear and unambiguous.Lake Hosp. Sys., Inc. v. Ohio Ins. Guar. Assn. (1994),69 Ohio St.3d 521, 525; State ex rel. Jones v. Conrad (2001),92 Ohio St.3d 389, 392. Here, R.C. 3309.661 simply does not extend vesting to payments for health care coverage.
 {¶ 32} Our conclusion that payments for health care coverage do not vest under R.C. 3309.661 is also consistent with the broader statutory scheme governing SERS. First, R.C. 3309.69(B) states that SERS "may," not "shall," provide health care coverage. Given this discretionary language, it is in SERS's discretion whether to offer any particular type of health care coverage, or, as appellants concede, any health care coverage at all. See Bigler v. York Twp. (1993), 66 Ohio St.3d 98, 100
(using the word "may" in a statute creates a discretionary power that a grantee "is not obligated" to use). Further, SERS is not required to maintain any reserves for health care coverage. Health care coverage is funded entirely through residual amounts left over after SERS actuaries account for the funding and reserve levels necessary for SERS to provide the statutorily mandated pension, disability, and survivor benefit payments to its retirees. Therefore, if payments for health care coverage vest as appellants argue, there is no guaranteed funding mechanism in place. Moreover, the payments cannot be funded by continually increasing the amount of the employers' contributions because, as appellees point out, employer contributions are capped. R.C. 3309.491. Lastly, as a practical matter, it would be extremely difficult for SERS to maintain and administer an unchanging health care plan for each retiree (locked in at the time of retirement) given the unpredictability of costs and the constantly evolving coverages that are available in the marketplace.
 {¶ 33} In contrast, SERS is required to pay pension, disability, and survivor benefits and there is a statutory mechanism in place to guarantee those payments. See, generally, R.C. 3309.36 (member "shall be granted a retirement allowance"); R.C. 3309.40 ("upon disability retirement, a member shall receive an annual amount that shall consist of * * *"); R.C. 3309.454 (survivor benefit payments "shall begin with the month subsequent to the member's death"). Further, we note that SERS's original and primary mission is to provide school retirees with pensions, disability, and survivor benefits. The General Assembly fixed the nature and amount of these payments and the type and nature of the employer and employee contributions needed to support these payments. SERS is required to maintain monetary reserves to guarantee pension, survivor, and disability payments into the future. Not surprisingly, SERS's pension, disability and survivor payments do vest under R.C. 3309.661.
 {¶ 34} The trial court drew a distinction between the vesting of specific health care plan features (and the costs associated therewith), and the vesting of "access" to health care coverage. The trial court found that, although costs and specific health care plan features did not vest under R.C. 3309.661, "access" to health care coverage did vest. In reaching this conclusion, the trial court relied upon a number of other provisions in Chapter 3309 and several related administrative code provisions that require SERS to establish insurance programs, make certain coverages available and/or make certain payments relating to a retiree's eligibility for Medicare. See, e.g., R.C. 3309.375
(Medicare equivalent benefits); R.C. 3309.691 (Program for participation in contracts for long term health care insurance); Ohio Adm. Code 3309-1-35 (Health care and Medicare "B"). We disagree with the trial court's conclusion for two reasons.
 {¶ 35} First, the parties did not dispute that SERS negotiated and purchased the health insurance plan at issue here pursuant to R.C. 3309.69(B). The parties also do not dispute that SERS's authority to purchase this health care coverage in the first instance was discretionary. What is at issue is the consequence of SERS's exercise of that discretionary authority. Other provisions in Chapter 3309 which impose mandatory obligations on SERS in connection with other insurance coverage matters are not relevant in determining whether a health care plan purchased pursuant to R.C. 3309.69(B) vests.
 {¶ 36} Second, the specific issue before the trial court was not whether retirees were entitled to access to health insurance benefits. The parties did not dispute that SERS retirees and beneficiaries had access to a health care plan. Rather, what they disputed was whether the specific cost structure and level of benefits provided by SERS's health care plan were vested under R.C. 3309.661. As we previously determined, because SERS did not grant payments for health care coverage to retirees or beneficiaries, this benefit did not vest. Moreover, regardless of whether SERS must provide retirees "access" to other forms of health insurance, access to a health care plan granted pursuant to R.C. 3309.69(B) is not a vested right under R.C. 3309.661.
 {¶ 37} Accordingly, we overrule appellant's second assignment of error and sustain the sole assignment of error in appellee's cross appeal.
 {¶ 38} Appellants contend in their fourth assignment of error that the trial court erred by failing to specifically address their objections to the magistrate's December 4, 2003 decision. We disagree.
 {¶ 39} Appellants' objections to the magistrate's December 4, 2003 decision related solely to the dismissal of their claim for breach of fiduciary duty. Because the trial court rejected the magistrate's decision in its entirety pursuant to Civ.R. 53(E)(4)(b), appellants were not prejudiced by the trial court's failure to address their specific objections. We recognize that the trial court went on to dismiss all of appellants' claims, including their claim for breach of fiduciary duty. Appellants challenge that aspect of the trial court's decision in their first and third assignments of error, and we will address those arguments below. Accordingly, appellants' fourth assignment of error is overruled.
 {¶ 40} Appellants' first and third assignments of error are related and, therefore, we address them together. Essentially, appellants contend that the trial court erred by dismissing the complaint in its entirety and by dismissing the complaint without ruling on each specific cause of action contained therein.
 {¶ 41} As a preliminary matter, we note that a trial court is not required to specifically enumerate and explain the basis for granting a Civ.R. 12(B)(6) motion to dismiss. In fact, the trial court has no obligation to issue a written opinion when granting a Civ.R. 12(B)(6) motion to dismiss. Thompson v. Cent. OhioCellular, Inc., (1994), 93 Ohio App.3d 530, 538; see, also,Vrable v. Vrable (1983), 9 Ohio App.3d 263, 272. In addition, when a trial court dismisses a complaint pursuant to Civ.R. 12(B)(6), it cannot make any findings, factual or otherwise, beyond its legal conclusion that the complaint fails to state a claim upon which relief can be granted. Thus, the trial court does not assume the role of fact finder and has no duty to issue findings of fact and conclusions of law. State ex rel. Drake v.Athens Cty. Bd. of Elections (1988), 39 Ohio St.3d 40, 41;Mayer v. Bristow (2000), 91 Ohio St.3d 3, 16; State ex rel.Grove v. Nadel (1998), 81 Ohio St.3d 325, 327; Sturgill v.Village of Lockbourne (Oct. 28, 1997), Franklin App. No. 97APE01-139.
 {¶ 42} When a Civ.R. 12(B)(6) motion is granted, it is presumed the trial court found that the plaintiff failed to state a claim. Therefore, in the case at bar, the trial court did not err solely because it failed to specifically enumerate and explain the basis for granting appellees' Civ.R. 12(B)(6) motion to dismiss. However, because the complaint alleged multiple causes of action, we must examine each claim separately to determine whether appellants pled sufficient facts to withstand a Civ.R. 12(B)(6) motion to dismiss.
 {¶ 43} A complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. State ex rel. Jennings v. Nurre (1995),72 Ohio St.3d 596, 597. In considering dismissal under Civ.R. 12(B)(6), the trial court must presume all the material allegations to be true, must resolve all doubt and inferences in the plaintiff's favor, and must view all allegations in the complaint in the light most favorable to the plaintiff. State ex rel. Longacre v.Penton Publishing Co. (1997), 77 Ohio St.3d 266, 267;Fahnbulleh v. Strahan (1995), 73 Ohio St.3d 666, 667. Moreover, our standard of review on this issue is de novo. Perrysburg Twp.v. Rossford, 103 Ohio St.3d 79, 2004-Ohio-4362, at ¶ 5.
 {¶ 44} Appellants' complaint contains six separate claims for relief: (1) declaratory judgment; (2) breach of contract/specific performance; (3) promissory estoppel; (4) unconstitutional taking; (5) breach of fiduciary duties; and (6) injunctive relief.[3] Appellants' claims for declaratory judgment, breach of contract/specific performance, unconstitutional taking and injunctive relief are all premised on the assertion that SERS's health care plan vests pursuant to R.C. 3309.661 and/or that SERS could not lawfully reallocate costs and modify plan benefits. For the reasons previously discussed, we have determined as a matter of law that SERS's payments for the health care plan at issue here do not vest under R.C. 3309.661. Furthermore, because the health care plan at issue here was provided pursuant to SERS's discretionary authority under R.C.3309.69(B) and, because this benefit does not vest, we find as a matter of law that SERS retains discretion to reallocate costs and/or to modify benefits provided under the plan. Therefore, we conclude that these claims were appropriately dismissed for failure to state a claim.
 {¶ 45} Likewise, to the extent that appellants' breach of fiduciary duty claim is premised on the alleged vesting of health care benefits granted pursuant to R.C. 3309.69(B), that claim also fails to state a claim as a matter of law. However, appellants' breach of fiduciary duty claim is also based on allegations that go beyond the issue of vesting. Specifically, appellants allege in paragraph 61 of the complaint that appellees breached their fiduciary duties by:
(E) Wasting assets of the SERS funds in their care and abusing their discretionary authority over the administration of SERS funds by incurring and approving unnecessary expenses for the construction of a new SERS administration building; and
(F) Wasting assets of the SERS funds in their care and abusing their discretionary authority over the administration of SERS funds by incurring and approving unreasonable and excessive increases in salary and bonuses for Defendant Anderson and other SERS employees.
 {¶ 46} Because we must presume these allegations to be true for purposes of a Civ.R. 12(B)(6) motion to dismiss, we find that appellants have stated a claim for breach of fiduciary duties to the extent their claim is based on: (1) the alleged wasting of SERS's funds in connection with the construction of the new SERS administration building; and (2) the alleged payment of unreasonable and excessive salary and bonuses to its executive director and other SERS employees. Accordingly, we find that the trial court erred by dismissing this claim in its entirety.[4]
 {¶ 47} Lastly, in count three of the complaint, appellants assert a claim for promissory estoppel. Appellants allege that SERS representatives promised them that the percentages of premium costs appellants would pay upon retirement, whether from 0 percent to 75 percent, would not change. Appellants allege they relied on these promises to their detriment. Therefore, appellants argue that appellees should be estopped from raising appellants' out-of-pocket costs and from reducing the level of health care coverage.
 {¶ 48} As a general rule, promissory estoppel does not apply against the state, its agencies, arms and agents. Sun RefiningMarketing Co. v. Brennan (1987), 31 Ohio St.3d 306, 307
("equitable estoppel generally may not be applied against the state or its agencies"); Griffith v. J.C. Penney Co., Inc.
(1986), 24 Ohio St.3d 112, 113 (Supreme Court of Ohio has "refused to apply principles of estoppel against the state, its agencies or its agents"); Gold Coast Realty, Inc. v. Bd. ofZoning Appeals of the City of Cleveland (1971),26 Ohio St.2d 37, 39 ("It is axiomatic that courts have historically been loathe to apply doctrines of wavier, laches or estoppel to governmental entities and arms thereof.").
 {¶ 49} The reasons for this general rule are apparent. A properly functioning government cannot tolerate individual state actors binding the state to actions that exceed or contravene its authority. This court has consistently echoed the rationale for the general rule and has refused to apply promissory estoppel to contravene statutory authority. Drake v. Med. College of Ohio
(1997), 120 Ohio App.3d 493, 496 ("Any representations made by the president or senior vice president would be contrary to express statutory law and, thus, promissory estoppel does not apply. * * * Mistaken advice opinions or a governmental agent do not give rise to a claim based on promissory estoppel."); KirkWilliams Co. v. Ohio State Univ. Bd. of Trustees (June 13, 1989), Franklin App. No. 88AP-697 ("It is also well-established that public officers cannot bind the government by acts outside their express authority, even though within their apparent powers * * *.").
 {¶ 50} However, some Ohio courts have applied promissory estoppel when the alleged promise of the state representative or agent was consistent with statutory authority. See, e.g.,Mechanical Contrs. Assn. of Cincinnati, Inc. v. Univ. ofCincinnati, 119 Ohio Misc.2d 109, 2002-Ohio-3506, affirmed,152 Ohio App.3d 466, 2003-Ohio-1837; State v. First, Inc. (Apr. 3, 1990), Montgomery App. No. 11486. The rational for the general rule forbidding estoppel from being asserted against the state is absent when the application of estoppel would lead to compliance with the law rather than contrary to it.
 {¶ 51} In the case at bar, we find that the exception to the general rule does not apply because the promises upon which appellants allegedly relied are inconsistent with SERS's discretionary authority under R.C. 3309.69(B) to offer a health care plan to retirees in the first instance and/or to reallocate costs or to modify plan features. If SERS can be estopped form reallocating costs or modifying health care plan features because of alleged promises by its employees/representatives, SERS would no longer have the discretion expressly granted to it by the General Assembly in R.C. 3309.69(B). Under these circumstances, estoppel cannot be applied against SERS. This conclusion is supported by a number of decisions from this court in which we refused to apply promissory estoppel to the retirement systems as a matter of law. See Sandhu v. Public Emp. Retirement Sys.
(Oct. 9, 1980), Franklin App. No. 80AP-333 ("[E]stoppel could not be applied against the defendant in this case, as the defendant only performed its duties as defined by statute.") McAuliffe v.Bd. of Pub. Emp. Retirement Sys. (1994), 93 Ohio App.3d 353,361-363 (PERS could not be estopped from following the relevant statutory provisions despite representations of staff); State exrel. Shumway v. Ohio State Teachers Retirement Bd. (1996),114 Ohio App.3d 280, 289 (court refused to apply estoppel to STRS, concluding that "estoppel is not applied against the state or its agencies in the exercise of a governmental function"); State exrel. Swartzlander v. State Teachers Retirement Bd. (1996),117 Ohio App.3d 131, 136 (estoppel did not apply against STRS);Smith v. State Teachers Retirement Bd. (Feb. 5 1998), Franklin App. 97APE07-943 (estoppel cannot be used to abrogate the statutory schemes that strictly control the state retirement systems). Therefore, we conclude that the trial court did not err by dismissing appellants' claim for promissory estoppel for failure to state a claim. Accordingly, we overrule in part and sustain in part appellants' first and third assignments of error.
 {¶ 52} In conclusion, we overrule appellants' second and fourth assignments of error in their entirety. We overrule appellants' first and third assignments of error to the extent that they relate to the dismissal of appellants' claims for declaratory judgment, breach of contract/specific performance, promissory estoppel, unconstitutional taking and injunctive relief. We also overrule appellants' first and third assignments of error to the extent they relate to the dismissal of that portion of their breach of fiduciary duty claim which is premised on the alleged vesting of health care benefits granted pursuant to R.C. 3309.69(B) or the deprivation of the benefit of the bargain regarding a health care plan. We sustain appellants' first and third assignments of error to the extent they relate to the dismissal of that portion of appellants' breach of fiduciary duty claim which is premised on: (1) the alleged wasting of SERS' funds in connection with the construction of the new SERS administration building; and (2) the alleged payment of excessive salary and bonuses to its executive director and other SERS employees. We also sustain appellees' sole assignment of error in the cross appeal. The judgment of the Franklin County Court of Common Pleas is sustained in part and reversed in part and remanded for further proceedings in accordance with law and this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
Bowman and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
[1] Health care for active employees is provided by local school district employers, not SERS.
[2] Chapter 3309 of the Revised Code also contains a number of other references to health care coverage as a benefit. For example, R.C. 3309.341(E) refers to certain SERS retirees who are "not eligible to receive health, medical, hospital, or surgical benefits under section 3309.69 of the Revised Code * * *." Similarly, R.C. 3309.375 contains several references to "hospital insurance benefits," and R.C. 3309.88, which pertains to defined contribution plans, refers to "health care benefits provided under section 3309.375 or 3309.69 of the Revised Code * * *." These references are consistent with the general view that health insurance coverage is a benefit when provided by a third party.
[3] Appellees argue in their brief that OAPSE and the employee-appellants lack standing to bring these claims. The magistrate determined that these appellants had standing. The trial court rejected the magistrate's decision without addressing the issue of standing. Because appellees did not assert a crossassignment of error based on lack of standing and failed to assert lack of standing in their cross-appeal, we decline to address this issue.
[4] Appellants also allege that appellees breached their fiduciary duty to appellants by depriving them of the benefit of their bargain of employment for receipt of free health care for life and/or for the receipt of low cost health care for life, with monthly premium subsidies of between 25 percent and 75 percent. Complaint at paragraph 61(C) and (D). These allegations are essentially indistinguishable from appellants' promissory estoppel claim. Therefore, we address them as part of our analysis of that cause of action.