**BECDIR CONSTRUCTION COMPANY, Appellant,**

v.

**PROCTOR, Dir., Ohio, Department of Transportation, Appellee.**

[Cite as *BECDIR Constr. Co. v. Proctor* (2001), 144 Ohio App.3d 389.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1429.

Decided June 26, 2001.

*Thompson, Hine & Flory LLP, Michael W. Currie, O. Judson Scheaf III* and *Michael N. Beekhuizen,* for appellant.

*Betty D. Montgomery,* Attorney General, *Marc A. Sigal* and *Stephan H. Johnson,* Assistant Attorneys General, for appellee.

---

BOWMAN, Judge.

Plaintiff-appellant BECDIR Construction Company ("BECDIR") appeals from the judgment of the Franklin County Court of Common Pleas that resolved cross-motions for summary judgment in favor of defendant-appellee, Ohio State Department of Transportation ("ODOT").

ODOT requested bids on a highway construction project in Lucas County. ODOT provided specifications for the project, which was known as Project 318. ODOT indicated that, among other things, Project 318 would require an estimated 6,139 cubic yards of high performance deck concrete. The concrete estimate was listed in Reference Item 208.

While it was preparing its bid proposal, BECDIR concluded that ODOT may have made an error in calculating the estimated amount of concrete in Reference Item 208. Based on its own calculations, BECDIR believed that the estimated quantity for concrete should have been 5,654 cubic yards. BECDIR contacted ODOT for verification of the concrete quantity. BECDIR informed ODOT that BECDIR's calculations produced an estimate that was "significantly under" ODOT's specification. Because Project 318 was supervised by ODOT's District 2, BECDIR's question was forwarded to a District 2 engineer for review. The engineer concluded that BECDIR may have omitted bridge overhang concrete from its calculations. ODOT, therefore, declined to change its estimate for Reference Item 208 concrete.

On June 13, 2000, ODOT opened the bids for Project 318. BECDIR had submitted the lowest bid. Jeffrey Hisem, the administrator of ODOT's Office of

Estimating, analyzed the bids for evidence of unbalancing, which occurs when a bidder prices an item so low that it does not cover the bidder's costs. Hisem noted that BECDIR's price for Reference Item 208 concrete was lower than that of all other bidders by more than $300 per cubic yard. Hisem contacted BECDIR to ask about its price for the high performance deck concrete. According to Hisem, BECDIR indicated that it bid a lower price for Reference Item 208 because BECDIR did not believe that it would use the total amount of concrete estimated in ODOT's specifications. This was the first time that officials at ODOT's Office of Estimating learned that there was a question regarding the concrete quantity for Reference Item 208. Hisem admits that he never asked BECDIR whether its bid on Reference Item 208 was sufficient to cover its costs.

ODOT's Office of Estimating then did its own calculations in an effort to ascertain the accuracy of ODOT's original estimate for Reference Item 208 concrete. These calculations indicated that BECDIR's estimate of 5,654 cubic yards was more accurate than ODOT's estimate of 6,139 cubic yards. On June 15, 2000, Hisem asked a District 2 engineer to recalculate the concrete quantity for Reference Item 208. The engineer's preliminary recalculations suggested that the proper estimate was 5,667 cubic yards.

ODOT's Awards Committee, which authorizes decisions to award construction contracts, met on June 16, 2000, to discuss whether to award Project 318. The Awards Committee was informed that the Office of Estimating and District 2 had reviewed the original calculations for Reference Item 208 concrete and concluded that ODOT's estimated quantity was inaccurate for bidding purposes. The Awards Committee noted that BECDIR would no longer be the lowest bidder if other bids were adjusted to reflect BECDIR's concrete quantity estimate or either of the new concrete estimates calculated by ODOT. The Awards Committee contemplated whether to award the contract to BECDIR, to award the contract to the second lowest bidder, or to reject all bids and re-let the project. The director of ODOT decided to reject all bids and re-let the project.

On June 23, 2000, after all bids were rejected, a District 2 engineer calculated a new concrete estimate. Ultimately, the project changed to include new specifications. Project 318 was never re-let for bid. The revised project, Project 8007, was let for bid and awarded to another contractor.

In its decision resolving summary judgment motions in ODOT's favor, the trial court concluded that the director of ODOT did not abuse his discretion when he decided, pursuant to R.C. 5525.01, to reject all bids on Project 318.

On appeal, BECDIR assigns the following errors:

"I. The undisputed facts establish that ODOT abused its discretion in failing to award the 318 Project to BECDIR. Accordingly, BECDIR is entitled to summary judgment in its favor.

"II. ODOT failed to come forward with any facts which would entitle it to summary judgment.

"III. The trial court employed the wrong legal standard and improperly failed to maintain the status quo when it denied BECDIR's motion for a temporary restraining order."

We conclude that the case is moot,· and we decline to rule on BECDIR's assignments of error.

█ " ' "The duty of this court, as of every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " *State ex rel. Eliza Jennings, Inc. v. Noble* (1990), 49 Ohio St.3d 71, 74, 551 N.E.2d 128, 131. BECDIR does not present this court with an actual controversy.

█ By its complaint, BECDIR sought a declaration that it is entitled to work on ODOT Project 318. BECDIR also sought to enjoin ODOT from re-letting Project 318. Any decision by this court regarding BECDIR's rights to declaratory or injunctive relief with respect to Project 318 would be purely academic. The undisputed evidence demonstrates that ODOT never awarded Project 318; rather, ODOT changed the specifications on the project. The new project, Project 8007, was let and awarded. BECDIR has made no allegations that it was the lowest competent and responsible bidder on Project 8007. Because Project 318 no longer exists, this court is not able to render judgment which can be carried into effect.

█ BECDIR argues that the mootness doctrine should not apply because the dispute at issue is "capable of repetition, yet evading review." See *State ex rel. Beacon Journal Publishing Co. v. Donaldson* (1992), 63 Ohio St.3d 173, 175, 586 N.E.2d 101, 102–103. BECDIR contends that this court should decide the merits of this case because future cases are likely to arise in which ODOT will contemplate whether to reject all bids because of an estimating error. BECDIR further contends that ODOT can always evade review when it does not want to award a contract to the lowest bidder by re-letting the contract and awarding it to another contractor.

██ Contrary to BECDIR's characterization, the scenario at issue is not capable of repetition, yet evading review. "This exception [to the mootness doctrine] applies only in exceptional circumstances in which the following two

factors are both present: (1) the challenged action is too short in duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 231, 729 N.E.2d 1182, 1185. "[T]here must be more than a theoretical possibility that the action will arise again." *James A. Keller, Inc. v. Flaherty* (1991), 74 Ohio App.3d 788, 792, 600 N.E.2d 736, 739.

■ We have no reasonable expectation that BECDIR will be subject to the same circumstances again. This fact-specific controversy arose only because ODOT made an estimating error, BECDIR discovered the error, ODOT refused to change its estimate, BECDIR may have submitted a bid using a different estimate than other bidders, and ODOT concluded that BECDIR may not have been the lowest bidder if all bidders had used the same estimate quantities. We decline BECDIR's invitation to issue an advisory opinion on the chance that this scenario will repeat. We also disagree that ODOT can evade review of its awards merely by re-letting its projects. If the director of transportation decides to award a contract, R.C. 5525.01 dictates that the director shall award it to the lowest qualified bidder. An aggrieved bidder has a cause of action if ODOT awards a project in violation of R.C. 5525.01. ODOT cannot use the process of rejecting and re-letting projects as a means of evading review of a controversy regarding ODOT's decision to award a contract.

■ Assuming we were to consider this case on the merits, we would conclude, as did the trial court, that the undisputed material facts demonstrate that ODOT acted lawfully when it rejected BECDIR's bid on Project 318. R.C. 5525.01 provides, as follows regarding the director of transportation's authority to accept or reject bids:

"The director may reject any or all bids. * * * [I]f the director awards the contract, the director shall award it to the lowest competent and responsible bidder * * * who is qualified to bid * * *."

■ BECDIR contends that, pursuant to *Smith & Johnson Constr. Co v. Ohio Dept. of Transp.* (1998), 134 Ohio App.3d 521, 731 N.E.2d 720, the director of transportation may not arbitrarily reject all bids on an ODOT project, as arbitrary rejection would amount to an abuse of the director's discretion. The *Smith* court, however, interpreted the director's statutory authority to *award a contract*, noting that " '[t]he standard of review for trial courts in determining whether a [governmental body] has appropriately *awarded a competitive bidder a contract* is whether the [body] abused its discretion.' " (Emphasis added.) *Id.* at 526–527, 731 N.E.2d at 723.

Assuming for purposes of this appeal, however, that the director of transportation's statutory authority to "reject any or all bids" is also governed by an abuse of discretion standard, we conclude that the director did not abuse his discretion when he rejected all bids on Project ·318. The term "abuse of discretion" connotes more than an error of law or judgment; rather, it implies an unreasonable, arbitrary, or unconscionable attitude on the part of the decision maker. *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205–206. Furthermore, the Ohio Supreme Court has held that " 'in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action.' " *Id.* at 21, 552 N.E.2d at 204.

BECDIR contends that the decision to reject all bids on Project 318 was an abuse of discretion because (1) ODOT never determined whether BECDIR's price for Reference Item 208 covered its costs; (2) ODOT rejected all bids before it concluded its efforts to recalculate the estimate for Reference Item 208 concrete; (3) all quantities in ODOT's project proposals are merely estimates, and one is not necessarily more accurate than another; (4) BECDIR alerted ODOT to the problem with its estimate for Reference Item 208, and BECDIR should not be punished by ODOT's failure to correct the problem; and (5) BECDIR's expert opined that ODOT's decision to reject all bids was arbitrary. Accepting all of BECDIR's factual accusations as true, we nevertheless conclude that ODOT's decision to reject all bids on Project 318 was not unreasonable, arbitrary, or unconscionable.

There is no indication in the record that ODOT made anything other than honest mistakes when it miscalculated the estimate for concrete in Reference Item 208 and declined to correct its estimate in light of BECDIR's pre-bid inquiry. The undisputed evidence demonstrated that, before it decided to reject all bids, ODOT did preliminary recalculations that indicated that BECDIR may have had more accurate information than other bidders regarding the quantity of concrete required for the project and that, if all bidders had the same information, the results of the bid might have been different. Under these circumstances, ODOT's decision to reject all bids did not amount to an abuse of discretion.

Because we conclude that BECDIR's assignments of error are moot, we *sua sponte* dismiss this appeal.

*Appeal sua sponte dismissed.*

TYACK and PETREE, JJ., concur.