JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from rulings of the common pleas court in a civil action brought by appellants, The Brewer-Garrett Company ("Brewer-Garrett") and its vice president Jeffery Zellers ("Zellers"), against appellees/cross-appellants, MetroHealth Systems ("MetroHealth"), et al. The underlying suit challenged MetroHealth's process in contracting a vendor to renovate a public health facility. Upon review of the record and the arguments, and for the reasons set forth below, we affirm in part, and dismiss in part.
 {¶ 2} MetroHealth is a hospital owned by the state and county. In May 2004, MetroHealth acquired the Deaconess hospital facility. MetroHealth wished to renovate the facility, including its power plant. In renovating the power plant, MetroHealth wanted to employ energy conservation measures to decrease energy costs. MetroHealth needed to contract with a vendor who could implement these renovations within a specified budget. To that end, MetroHealth decided to seek proposals from contracting vendors for the project, pursuant to R.C. 307.041. By seeking proposals pursuant to R.C. 307.041, MetroHealth elected not to accept bids, pursuant to the R.C. 307.86 competitive bidding process.
 {¶ 3} Between May and June 2004, MetroHealth initiated the proposal process of R.C. 307.041 by placing advertisements for the renovation project in two issues of The Plain Dealer and then issuing formal requests for proposals ("RFP"). MetroHealth received proposals from two potential vendors: Brewer-Garrett and Reliance Mechanical, L.L.C. ("Reliance"). On June 30, 2004, MetroHealth's board of trustees authorized negotiations with Reliance, pending approval by the Cuyahoga County Commissioners. Brewer-Garrett took issue with the board's decision, and this civil action ensued.
 {¶ 4} On July 6, 2004, appellants, Brewer-Garrett and Zellers, filed a complaint seeking declaratory judgment, injunctive relief, mandamus, attorney fees and costs. Hours before filing the complaint, appellants faxed a letter to the Cuyahoga County Prosecutor's office asking the prosecutor to also take action against MetroHealth on behalf of the taxpayers. The prosecutor's office refused, asserting that notice of only a few hours was an insufficient amount of time to properly investigate the matter. Appellants therefore filed suit on behalf of the state as taxpayers, pursuant to R.C. 309.13.
 {¶ 5} On July 7, 2004, the trial court issued a temporary restraining order ("TRO") enjoining MetroHealth from entering into or executing any form of contract with Reliance. This TRO was effective until July 12, 2004, at which time a hearing was held pursuant to appellants' motion for preliminary injunction. On July 21, 2004, the trial court issued a judgment entry granting the preliminary injunction.
 {¶ 6} MetroHealth responded by filing a motion to set bond. MetroHealth's board also took collateral measures and, on July 28, 2004, rescinded its authorization to contract with Reliance pursuant to the R.C. 307.041 process. The board then rejected all proposals and terminated the R.C. 307.041 proposal process. MetroHealth thereafter initiated a competitive bidding process, pursuant to R.C. 307.86.
 {¶ 7} On November 1, 2004, the trial court issued a journal entry granting in part appellees' motion for summary judgment, holding that neither Brewer-Garrett nor Zellers were valid taxpayers permitted to file public suit pursuant to R.C. 309.13. The trial court thereby dismissed any claims for attorney fees or costs. The trial court also granted appellees' motion to set bond, pursuant to Civ.R. 65, and on November 16, 2004, the $267,000 bond was posted.
 {¶ 8} On December 28, 2004, the trial court issued a judgment entry that proved fatal to appellants' complaint wherein the trial court denied a motion by appellants for leave to amend their complaint. It also denied their prior motion for summary judgment holding that it did not have the power to order the county to enter into a contract with Brewer-Garrett. Accordingly, the trial court dismissed appellants' claim for mandamus, leaving only the claims for declaratory judgment and injunctive relief.
 {¶ 9} On February 18, 2005, appellees filed a motion for summary judgment on the remaining counts arguing that they were now moot since the R.C. 307.041 proposal process at issue had been terminated. On October 28, 2005, the trial court agreed that the remaining claims were moot and granted appellees' motion for summary judgment, dismissing the balance of the complaint. This appeal followed with appellants offering two assignments of error and appellees/cross-appellants offering four assignments of error.[1]
 APPELLANTS' APPEAL {¶ 10} The assignments of error presented by appellants challenge the rulings of the December 28, 2004 journal entry, which denied their motion for leave to amend their complaint and rejected their request for mandamus:
 {¶ 11} "Plaintiff's motion for leave to file first amended complaint to add new party defendants, filed 10/20/04, is denied. Plaintiff's motion for summary judgment, filed 8/4/04, is denied. * * * For the energy conservation program to renovate the Deaconess Facility power plant MetroHealth chose to request proposals under O.R.C. 307.041 and not to engage in competitive bidding under O.R.C. 307.86. O.R.C. 307.041 reads `upon receiving the proposals, the county shall analyze them and select the proposal or proposals most likely to result in the greatest energy savings considering the cost of the project and the county's ability to pay for the improvements with current revenues or by financing the improvements.' Additionally, MetroHealth's request for proposals issued on June 9, 2004, reads, `MetroHealth reserves the right to reject any and all proposals.' Therefore, pursuant to O.R.C. section 307.041(C)(2) only the Cuyahoga County Commissioners can select a proposal. The court cannot at this time order the county to enter into a contract with Brewer-Garrett. Hence, the court denies plaintiff's request for a Writ of Mandamus. * * *"
 {¶ 12} Appellants also argue that the trial court erred in its November 1, 2004 judgment entry, which found that they are unable to bring a public suit as taxpayers pursuant to R.C.309.13:
 {¶ 13} "* * * The court finds plaintiff's attempt to bring this action as a Cuyahoga county taxpayer is without merit. O.R.C. 309.13 reads `if the prosecuting attorney fails, upon written request of a taxpayer of the county, to make the application or institute the civil action contemplated * * * the taxpayer may make such application or institute such civil action in the name of the state.' Plaintiff faxed a letter to William Mason, the Cuyahoga County Prosecutor, on the afternoon of July 6, 2004, requesting he take action regarding this captioned case. On that same afternoon, plaintiff filed a complaint and requested a TRO in this captioned case. Plaintiff did not give the prosecutor a reasonable amount of time to make the application or institute a civil action. Additionally, when the taxpayer's goal in filing a lawsuit is merely for his own benefit, no public right exists and a taxpayer action cannot be maintained. City ofCleveland ex rel. O'Malley v. White (2002), 148 Ohio App.3d 564. In the captioned case, plaintiff requested the court order MetroHealth (defendant) to award the contract to Brewer-Garrett (plaintiff). Such a request is for the benefit of Brewer-Garrett and not the enforcement of a public right."
 {¶ 14} Lastly, appellants challenge the trial court's finding that the remaining claims are moot. They argue that MetroHealth was in violation of the court ordered preliminary injunction when it rejected all proposals and proceeded with a competitive bidding process. After review of the record and the arguments presented, we find no error in the trial court's rulings.
 Motion for Leave to Amend Complaint {¶ 15} On October 26, 2004, appellants filed a motion for leave to amend their complaint. The proposed amendments to the complaint added a claim for damages and named defendants, specifically John Carroll (vice president of MetroHealth) and the Cuyahoga County Commissioners. The trial court denied that motion and appellants contend it was error to do so. We disagree.
 {¶ 16} An appellate court reviews a trial court's decision on a motion for leave to file an amended pleading under an abuse of discretion standard. Wilmington Steel Products, Inc. v.Cleveland Electric Illuminating Company (1991),60 Ohio St.3d 120, 122. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984),15 Ohio St.3d 164, 222, quoting Spalding v. Spalding (1959),355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoffv. Fairview General Hospital (1996), 75 Ohio St.3d 254.
 {¶ 17} "Where a Plaintiff fails to make a prima facie showing of support for new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleadings." Wilmington Steel Products, Inc., supra. Where an amendment to the complaint would have been futile, the trial court also does not abuse its discretion in denying the motion.Perrin v. Bishop (Dec. 2, 1993), Cuyahoga App. No. 64266.
 {¶ 18} Appellants' motion for leave to amend does not make a sufficient showing of support for the amendments. In addition, there is evidence of futility in the proposed amendments. Appellants did not provide sufficient support for the addition of the newly named defendants to the complaint. The record demonstrates that there was no significant explanation given for the need to add John Carroll or the Cuyahoga County Commissioners to the litigation. An amended pleading is designed to include matters occurring before the filing of the complaint, but were either overlooked or not known at the time. Meyer v. WabashAlloys, LLC, Cuyahoga App. No. 80884, 2003-Ohio-4400. Here, appellants knew of these parties and their significance prior to filing their original complaint. It therefore was not an abuse of discretion to find that it was not appropriate to grant appellants' attempt to add these parties through an amended complaint well into the litigation.
 {¶ 19} As for their attempt to add a claim for damages, the law is clear that such a claim is not permitted in this type of case. The courts of Ohio have consistently held that monetary damages are not remedies available to unsuccessful bidders in a public bidding situation. Cavanaugh Bldg. Corp. v. Bd. CuyahogaCty. Comm'rs (Jan. 27, 2000), Cuyahoga App. No. 75607; MidwestServ. Mgmt. v. Local Bd. of Edn. (2001), 144 Ohio App.3d 443;Hardrives Paving Constr. v. Niles (1994), 99 Ohio App.3d 243. Although this case involves a rejected proposal rather than a rejected bid, the same principles apply. Furthermore, where the contracting authority retains a right to reject all bids and to solicit new ones, or proposals in this case, claims for damages are not permitted. Kent Business Interior, Inc. v. Ohio Dept. ofAdm. Serv. (1990), 61 Ohio Misc.2d 847.
 {¶ 20} The court in Hardrives, supra, clearly stated its reasons for not allowing monetary damages to be awarded in these cases:
 {¶ 21} "[I]f monetary damages for lost profits were an available remedy, damages would provide an adequate remedy at law and injunction would not be appropriate. Thus, the fact that injunctive relief is available generally indicates that a monetary award is not available for lost profits.
 {¶ 22} "* * *
 {¶ 23} "The intent of competitive bidding [or an RFP process] is to protect both the public and the bidders themselves. SeeCedar Bay Constr., 50 Ohio St.3d at 21, 552 N.E.2d at 204-205. Thus, if we were to allow appellant to receive monetary damages, only the bidders would be protected because the public would have to pay the contract price of the successful bidder plus the lost profits of an aggrieved bidder. However, if injunction is the sole remedy, both the public and the bidders themselves are protected. Accordingly, we conclude that injunction is the only remedy available." Hardrives, supra at 247-248.
 {¶ 24} The only case appellants cite in refuting the barring of damage awards in these cases is Cementech, Inc. v. Fairlawn
(2005), 160 Ohio App.3d 450; however, that case has recently been overruled by the Ohio Supreme Court in Cementech, Inc. v.Fairlawn, 109 Ohio St.3d 475, 2006-Ohio-2991, 849 N.E.2d 24. There the Court clearly held that a rejected bidder may not recover lost profits as damages in these types of cases. Id., syllabus.
 {¶ 25} With no genuine support for the naming of new defendants, and by proposing the addition of a claim not permitted by law, we cannot find an abuse of discretion by the trial court in denying appellants' motion for leave to amend the complaint. Thus the trial court did not err in so ruling.
 Writ of Mandamus {¶ 26} Appellants also argue that it was error for the trial court to reject their claim for mandamus. In the mandamus claim, appellants demanded that the court order MetroHealth to award Brewer-Garrett the renovation contract; however, the court did not have the authority to make such an order.
 {¶ 27} To be entitled to a writ of mandamus, one must establish: "1) that he has a clear legal right to the relief prayed for, 2) that respondents are under a clear legal duty to perform the acts, and 3) that the [moving party] has no plain and adequate remedy in the ordinary course of the law." Goudlock v.State, Cuyahoga App. No. 84135, 2004-Ohio-2352. Appellants have not met the qualifications necessary for a writ of mandamus.
 {¶ 28} MetroHealth decided to find a vendor to implement energy conservation measures via a RFP process pursuant to R.C.307.041 (H.B. 300), which reads as follows:
 {¶ 29} "(C) A county desiring to implement energy conservation measures may proceed under either of the following methods:
 {¶ 30} "(1) Using a report of any part of a report prepared under division (B) of this section, advertise for bids and comply with sections 307.86 to 307.92 of the Revised Code;
 {¶ 31} "(2) Notwithstanding sections 307.86 to 307.92 of the Revised Code, request proposals from at least three vendors for the implementation of energy conservation measures. Prior to sending any installer of energy conservation measures a copy of any such request, the county shall advertise its intent to request proposals for the installation of energy conservation measures in a newspaper of general circulation in the county once a week for two consecutive weeks. The notice shall state that the county intends to request proposals for the installation of energy conservation measures; indicate the date, which shall be at least ten days after the second publication, on which the request for the proposals will be mailed to installers of energy conservation measures; and state that any installer of energy conservation measures interested in receiving the request for proposals shall submit written notice to the county not later than noon of the day on which the request for proposal will be mailed.
 {¶ 32} "Upon receiving the proposals, the county shall analyze them and select the proposal or proposals most likely to result in the greatest energy savings considering the cost of the project and the county's ability to pay for the improvements with current revenues or by financing the improvements. The awarding of a contract to install energy conservation measures under division (C)(2) of this section shall be conditioned upon a finding by the contracting authority that the amount of money spent on energy savings measures is not likely to exceed the amount of money the county would save in energy and operating costs over ten years or a lesser period as determined by the contracting authority or, in the case of contacts of conservation systems, over five years or a lesser period as determined by the contracting authority. Nothing in this section prohibits a county from rejecting all proposals or from selecting more than one proposal."
 {¶ 33} Nothing in this statute dictates that the acceptance of a proposal definitively leads to a contract. There are still hurdles to overcome to be awarded a contract once a proposal is accepted. The contracting authority can also choose more than one proposal, which further indicates that negotiations may continue even after a proposal is accepted. Thus, appellants cannot survive the first prong of the mandamus test since there is no clear legal right to the relief prayed for in that there is no absolute right to a contract pursuant to R.C. 307.041.
 {¶ 34} While it is apparent that the rulings in this matter are to follow the interpretations of R.C. 307.041, much of appellants' brief alludes to the use of the more restrictive bidding process, as defined in R.C. 307.86, which reads:
 {¶ 35} "Anything to be purchased, leased, leased with an option or agreement to purchase, or constructed, including, by not limited to, any product, structure, construction, reconstruction, improvement, maintenance, repair, or service, except the services of an accountant, architect, attorney at law, physician, professional engineer, construction project manager, consultant, surveyor, or appraiser, by or on behalf of the county or contracting authority, as defined in section 307.92 of the Revised Code, at a cost in excess of twenty-five thousand dollars except as otherwise provided * * *, shall be obtained through competitive bidding."
 {¶ 36} Even using this standard in finding a vendor does not allow for the trial court to grant appellants' writ of mandamus. No contract was entered into, so no legal duty ever existed. Therefore, appellants are not entitled to mandamus, and the trial court did not err in rejecting their request for a writ ordering the award of the renovation contract.
 Taxpayer Status Pursuant to R.C. 309.13 {¶ 37} R.C. 309.12 states:
 {¶ 38} "Upon being satisfied that funds of the county, or public moneys in the hands of the county treasurer or belonging to the county, are about to be or have been misapplied, * * * orthat a contract, in contravention of the law, has been executedor is about to be entered into, or that such contract wasprocured by fraud or corruption, * * *, the prosecuting attorney may, by civil action in the name of the state, apply to a court of competent jurisdiction, to restrain such contemplated misapplication of funds, or the completion of such illegal contract, or to recover, for the use of the county, all public moneys so misapplied or illegally drawn or withheld from the county treasury, or to recover damages, for the benefit of the county, resulting from the execution of such illegal contract, * * * or to recover for the benefit of the county, damages resulting from the nonperformance of the terms of such contract, or to otherwise enforce it, or to recover such money as is due the county." (Emphasis added.)
 {¶ 39} A taxpayer may file such a public lawsuit on behalf of the state if the following requirements of R.C. 309.13 are met:
 {¶ 40} "If the prosecuting attorney fails, upon the written request of a taxpayer of the county, to make the application or institute the civil action contemplated in section 309.12 of the Revised Code, the taxpayer may make such application or institute such civil action in the name of the state, or, in any case wherein the prosecuting attorney is authorized to make such application, such taxpayer may bring suit or institute any such proceedings against any county officer or person who holds or has held a county office, for misconduct in office or neglect of his duty, to recover money illegally drawn or illegally withheld from the county treasury, and to recover damages resulting from the execution of such illegal contract.
 {¶ 41} "If such prosecuting attorney fails upon the written request of a taxpayer of the county, to bring such suit or institute such proceedings, or if for any reason the prosecuting attorney cannot bring such action, or if he has received and unlawfully withheld moneys belonging to the county, or has received or drawn public moneys out of the county treasury which he is not lawfully entitled to demand and receive, a taxpayer, upon securing the costs, may bring such suit or institute such proceedings, in the name of the state. Such action shall be for the benefit of the county, as if brought by the prosecuting attorney.
 {¶ 42} "If the court hearing such case is satisfied that such taxpayer is entitled to the relief prayed for in his petition, and judgment is ordered in his favor, he shall be allowed his costs, including a reasonable compensation to his attorney."
 {¶ 43} Appellants contend that they validly filed public suit as taxpayers pursuant to R.C. 309.13, thus allowing them a chance to recover reasonable costs and fees. We disagree.
 {¶ 44} In rejecting appellants' status as a valid taxpayer for the purposes of filing a public lawsuit on behalf of the state, the trial court stated a couple of reasons. First, the trial court noted that appellants did not give the prosecutor's office sufficient time to file the suit before filing the suit themselves. Second, the trial court asserted that since appellants were merely filing the taxpayer suit for their own personal benefit rather than for the benefit of the general public, they were not allowed taxpayer status by law. We concur with the logic and decision of the trial court.
 {¶ 45} A party must allow a meaningful opportunity for the prosecuting attorney to file a public civil suit. Not only must a taxpayer provide a written request to the prosecuting attorney to bring a public suit, a taxpayer must also allow the prosecuting attorney a reasonable amount of time to comply with that request.Mulder v. Village of Amherst (1962), 115 Ohio App. 117;Nunnold v. City of Toledo (1935), 52 Ohio App. 172.
 {¶ 46} Appellants provided the prosecutor's office with only approximately three to four hours to comply with its request for a public suit. While there is no bright-line test for what is or is not a reasonable amount of time, we do not find a few hours to be reasonable.
 {¶ 47} In addition, there are real questions as to appellants' true motivation in filing a public suit. It is clear from the statute that the purpose of a public suit is to protect the public. It is not to be used for personal benefit. This court has held that a taxpayer action of this type may not be filed strictly for personal benefit. City of Cleveland ex rel.O'Malley v. White, supra; See, also, State ex rel. Fisher v.City of Cleveland, Cuyahoga App. No. 83945, 2004-Ohio-4345.
 {¶ 48} Appellants contend that although they would clearly benefit from a public suit decision in their favor, there is still a public benefit in that the state would, allegedly, be receiving lower energy costs with their renovation proposal. It appears from the record that the true intent is the recoupment of costs and damages and for the award of a contract. This court is hard pressed to find any concern with the public welfare; rather, it seems clear that this suit is for the benefit of appellants. Thus, we do not find error in the trial court's decision to reject appellants' taxpayer status to file a public suit pursuant to R.C. 309.13.
 Dismissal of the Remainder of the Complaint as Moot {¶ 49} Appellants also challenge the trial court's dismissal of the remainder of their complaint as moot and argue that MetroHealth was in violation of the preliminary injunction when it rejected all proposals, terminated its RFP process, and proceeded instead with a competitive bidding process. We again disagree.
 {¶ 50} The preliminary injunction issued by the trial court on July 21, 2004, enjoined MetroHealth from contracting with Reliance pursuant to the R.C. 307.041 proposal process. Specifically, the court held:
 {¶ 51} "The defendant MetroHealth System is enjoined frompresenting Reliance's proposal to the County Commissioners for approval until further order of the court." (Emphasis added.)
 {¶ 52} It is clear from the record that the trial court's concern in granting the preliminary injunction was the propriety of the proposal process that took place; however, the trial court was silent as to whether MetroHealth was enjoined from terminating the process at issue and choosing another process to find a vendor capable of implementing the energy conservation measures.
 {¶ 53} A plain reading of R.C. 307.041 illustrates that a party accepting proposals is free to reject all proposals at any time. If a statute is unambiguous in its meaning, it must be given its plain meaning when applied. Fowee v. Wesley Hall,Inc. (2006), 108 Ohio St.3d 533; Bailey v. Republic EngineeredSteels, Inc. (2001), 91 Ohio St.3d 38. MetroHealth reserved the right to reject all proposals when it formally requested proposals. We find no error in MetroHealth being permitted to terminate the R.C. 307.041 proposal process.
 {¶ 54} Since the proposal process that was enjoined by the trial court's preliminary injunction had been terminated, the trial court was correct in finding that any ruling as to declaratory or injunctive relief would be moot. "The duty of an appellate court, as of every judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." BECDIRConstr. Co. v. Proctor (2001), 144 Ohio App.3d 389, at syllabus. In BECDIR, supra, the trial court similarly found an appeal from a competitive bidding process to be moot after the party who accepted a bid, and was enjoined from contracting with that bidder, had terminated the project. In finding the appeal moot, the court held, "[a]ny decision by this court regarding BECDIR's rights to declaratory or injunctive relief * * * would be purely academic." Id. at 393. The same would apply in this case because the challenged proposal process was terminated.
 {¶ 55} We find no error in the decision of the trial court to grant appellees' motion for summary judgment after finding appellants' remaining claims moot.
 CROSS-APPEAL {¶ 56} In its cross-appeal, appellees/cross-appellants (referred to herein as "appellees") challenge the trial court's original granting of a preliminary injunction in favor of appellants and the trial court's denial of a number of motions for summary judgment. None of the trial court's rulings challenged in this cross-appeal effect a substantial right of the appellees. We therefore dismiss this cross-appeal as moot, pursuant to R.C. 2505.02.
 {¶ 57} In their first assignment of error, appellees challenge the initial granting of a preliminary injunction enjoining them from acting until further order of the court. After ordering the preliminary injunction in a complaint that ultimately prayed for permanent injunction, the trial court dismissed the entire complaint through summary judgment and a finding of mootness. "An order of a court of common pleas granting a temporary injunction in a suit in which the ultimate relief sought is an injunction is not either a judgment or a final order which may be reviewed by a circuit court on petition in error." Sports Unlimited of N. Ohio v. Kanner Indus., Inc.
(1980), Cuyahoga App. No. 42417, syllabus. We, therefore, decline to rule on the veracity of the preliminary injunction.
 {¶ 58} In their remaining assignments of error, appellees challenge various denials of motions for summary judgment; however, the "denial of a motion for summary judgment does not constitute a final appealable order." Oliver v. Phelps,
Trumbull App. No. T-0184, 2004-Ohio-2787, syllabus. "Courts will not indulge in advisory opinions." State ex rel. White v. Koch,96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, syllabus. It is apparent that the substantial rights of the appellees have not been affected by a final appealable order that can be reviewed by this court. This cross-appeal is therefore dismissed.
Judgment affirmed as to appeal; cross-appeal dismissed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, A.J., and Joseph J. Nahra, J.,* concur.
 APPENDIX A Appellants' Assignments of Error:
I. The trial court erred as a matter of law in determining that, although appellants were awarded a preliminary injunction because MetroHealth did not conduct the request for proposal (`RFP') process in a manner that was fair and open, and although plaintiffs posted a bond in the amount of $267,000 in accordance with the preliminary injunction, no permanent injunction or other equitable relief was necessary, and that appellants are valid taxpayers entitled to further relief.
II. The trial court erred as a matter of law in denying plaintiffs' motion for leave to file a first amended complaint to add new party defendants, and barring plaintiffs from a trial on the merits.
Appellees'/Cross-Appellants' Assignments of Error:
I. The trial court erred in finding an abuse of discretion, and in applying an incorrect standard to determine whether the MetroHealth system ("MetroHealth") abused its discretion under Ohio Revised Code ("R.C.") § 307.041(C)(2) and, therefore, erred in entering preliminary injunctive relief against MetroHealth.
II. The trial court erred in denying appellees MetroHealth and Mr. Sideras summary judgment on appellants' The Brewer-Garrett Company ("Brewer-Garrett") and Mr. Zellers claim for permanent injunctive relief.
III. The trial court erred in denying appellees summary judgment on appellants' claim for declaratory relief.
IV. The trial court erred in denying appellees summary judgment on appellant Zellers' claims.
[1] All assignments of error are included in Appendix A attached hereto.
* SITTING BY ASSIGNMENT: JUDGE JOSEPH J. NAHRA, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.